NO. 07-06-0225-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

NOVEMBER 30, 2007
_____

MICHAEL A. WILLIAMS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-412139; HONORABLE JIM BOB DARNELL, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

_____**OPINION**

Appellant, Michael A. Williams, appeals his conviction for burglary of a habitation, enhanced by a previous felony conviction, and sentence of 45 years confinement in the Institutional Division, Texas Department of Criminal Justice. Appellant contends that the trial court erred in denying his motion to suppress, which alleged an impermissibly suggestive pre-trial identification procedure tainted the in-court identification of appellant in violation of the Due Process Clause of the 14th Amendment of the United States Constitution. We affirm.

## Background

Around 11:00 a.m. on July 7, 2005, Jean Jobe received a call from her alarm company alerting her that her home alarm was going off at the backdoor. Jobe drove immediately to her home and, upon arriving, witnessed a man coming out of the backdoor of her house. Because he was not aware of her presence, she was able to observe the burglar's profile for about a minute and a half. She then yelled at the burglar, catching his attention, and observed him face-to-face for another 45 seconds. The burglar fled the scene and Jobe pursued him for half a block. While pursuing the burglar, she called 9-1-1 and described the man and identified the direction he was running.

No more than thirty minutes after Officer Herrera was dispatched to investigate the burglary call, he encountered appellant, who matched the description of the burglar, in an alley about a block and a half or two blocks from Jobe's home. Herrera told appellant that he was going to place him in the patrol car and transport him to a different location for identification, at which time, appellant stated, "I'll tell you the truth. I tried to break into the house."

Herrera took appellant back to Jobe's home for a "showup." Upon arriving at Jobe's house, Herrera told Jobe that "I need you to identify the man and then step away from the car." Jobe approached the patrol car, observed appellant, and told the officers, "That's him. He's the one." Appellant was then placed under arrest and transported to jail by another officer on the scene.

At trial, appellant filed a motion to suppress both the showup identification and the statement he made to Herrera. Following a jury trial, appellant was convicted of burglary of a habitation, enhanced by a 1985 felony conviction of burglary of a habitation, and sentenced to 45 years confinement in the Institutional Division, Texas Department of Criminal Justice. In his appeal, appellant does not challenge the trial court's denial of his motion to suppress the statement he made to Herrera. Therefore, the statement is before the appellate court for all purposes. In his sole point of error, appellant challenges only the trial court's denial of his motion to suppress his pretrial identification by Jobe, claiming that the impermissibly suggestive pre-trial identification procedure utilized tainted the in-court identification of appellant in violation of the Due Process Clause of the 14th Amendment of the United States Constitution.

## Standard of Review

Whether the trial court erred in admitting into evidence a witness's identification of the accused involves a mixed question of law and fact. Loserth v. State, 963 S.W.2d 770, 772 (Tex.Crim.App. 1998). Great deference is given to the trial court's resolution of the historical facts pertinent to the case; however, whether the historical facts render the identification unreliable is reviewed *de novo*. Id. at 772-74. Thus, the appellate court need not grant deference to the trial court's determination that the "historical facts compelled or supported the decision to admit or exclude the evidence." Benitez v. State, 5 S.W.3d 915, 921 (Tex.App.–Amarillo 1999, pet. ref'd).

Law and Analysis

The court makes two inquiries in determining whether a pre-trial identification should be excluded: (1) whether the police used an impermissibly suggestive pre-trial identification procedure in obtaining the out-of-court identification, and (2) if so, whether, under all the circumstances, there was a very substantial likelihood of irreparable misidentification. Manson v. Brathwaite, 432 U.S. 98, 107, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

The first inquiry in determining whether appellant's due process rights were violated is whether the police used an impermissibly suggestive procedure in obtaining the out-of-court identification. Id. Upon apprehending appellant, Herrera brought him back to the scene, seated in the back of the patrol car in handcuffs, and instructed Jobe that all she needed to do was identify him and get away from the car. Jobe testified that she approached the car, looked in, examined appellant, and then identified him with "no doubt," based on his facial features and with "no influence in identifying him from anyone involved."

In the present case, appellant asserts that, "this case should turn on the impermissibly suggestive pre-trial identification alone." However, to show that the statement made by Herrera was impermissibly suggestive, appellant relies solely on the holding in Delk v. State, 855 S.W.2d 700, 706 (Tex.Crim.App. 1993). Appellant asserts that, in Delk, the court held that a single picture shown to a witness was an impermissibly suggestive method of identification. Id. Therefore, the appellant reasons that the method used by Herrera, whereby only a single individual was shown to Jobe, was similarly impermissibly suggestive. However, appellant misstates the Delk court's holding. The

4

Delk court did not conclusively determine that identification by a single picture was impermissibly suggestive; rather, it held only that the single picture coupled with the statements of the police made it "possible" that this procedure impermissibly suggested that the Sheriff believed the person in the photo killed the witness's husband. Id. The Delk court went on to say that, even if this method was impermissibly suggestive, this does not end the inquiry. Id. at 706. The court must also address whether there was a substantial likelihood of irreparable misidentification. Id.

Under Delk, Herrera's method, whereby only a single individual was shown to Jobe, coupled with Herrera's statement, made it "possible" that this procedure impermissibly suggested that Herrera believed the person in the backseat of the squad car was the burglar. However, as appellant cites no further authority to support his assertion that "this case should turn on the impermissibly suggestive pre-trial identification alone," under Delk, even if it is "possible" that Herrera's method was impermissibly suggestive, this does not end the inquiry. The court must also address whether there was a substantial likelihood of irreparable misidentification.

Because under Delk it is only "possible" that the procedure was impermissibly suggestive, the question thus becomes whether, under the totality of the circumstances, the identification was reliable despite the suggestive nature of the confrontation's procedure. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d. 401 (1972). The following five factors should be "weighed against the corrupting effect of any suggestive identification procedure in assessing reliability under the totality of the circumstances": (1)

the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and confrontation. Id. at 199-200.

Jobe had the opportunity to view the burglar's profile during the minute and a half that she witnessed him coming out of the backdoor of her house. After catching his attention, she viewed him face-to-face for an additional 45 seconds, at which time, Jobe testified that she was so close that she "could have tackled him." Furthermore, Jobe pursued the burglar for about half a block before terminating her pursuit, giving her additional time to observe his clothing.

Appellant asserts that nothing in the record indicates that Jobe had a heightened degree of attention to the details of the burglar. However, after receiving the call from her alarm company, Jobe had reason to believe that someone had entered her house through the backdoor. Upon arriving at the backdoor of her home, she observed the burglar for the minute and a half that he was unaware of Jobe's presence, as well as for the 45 seconds after Jobe confronted him. Furthermore, Jobe described the burglar and the direction in which he was fleeing to the 9-1-1 operator as she was in pursuit of him. Thus, the record indicates that, from the time Jobe received the phone call from the alarm company, she had a heightened degree of attention that continued throughout her observation, pursuit, and description of the burglar.

6

Jobe described the burglar to the 9-1-1 operator as a "skinny black male, about 5'9", with short black hair wearing a gray shirt and gray shorts with a thin white band running across the bottom of his shorts. Appellant asserts he was "dressed somewhat differently at the time he was encountered by law enforcement" than the description of the burglar that Jobe gave because he had a small silver band going around the bottom of his shorts. However, Jobe's description of the burglar's physical features, the direction in which he was fleeing, and his clothing, other than the color of the band on the bottom of his shorts, was sufficiently accurate to ensure no irreparable mistaken identity.

When appellant was brought to Jobe's home, Jobe testified that she looked in the police car, observed the man, looked at his pants, knew he was the burglar and, with "no doubt," immediately indicated to police, "that's him. He's the one." Appellant contends that Herrera's statement that he needed Jobe to identify the man and then step away from the car was enough to suggest to Jobe that appellant was the burglar. Jobe testified that she recognized the burglar based on her observations of him and that she "had no influence [in] identifying him from anyone involved." We construe Herrera's request that Jobe identify the man and then step away from the car as instructions to Jobe and not as a suggestion regarding whether appellant was the burglar so as to affect Jobe's level of certainty. Herrera never made any statements suggestive that he believed appellant to be the burglar; only that Jobe was to look into the car and determine whether this person, who matched the description she gave in the 9-1-1 call, was the person she saw coming out of her backdoor.

Jobe and appellant are in agreement that the length of time between Jobe's encounter with the burglar and appellant's apprehension was no more than 30 minutes. The record supports an even shorter length of time between the 11:36 a.m. 9-1-1 call, the 11:39 a.m. dispatch of Herrera, his two to three minute encounter with appellant a block and a half to two blocks away from Jobe's house, and his immediate return to Jobe's house to conduct the showup. Regardless, the lapse of time between Jobe's viewing of the burglar and her identification of appellant was insufficient for Jobe to forget the burglar's facial features or physical characteristics and to result in irreparable mistaken identification.

Having considered the factors for the determination of reliability of a suggestive identification procedure under the totality of the circumstances, we find that the showup procedure used by Herrera did not result in irreparable mistaken identification. Furthermore, appellant does not appeal the denial of the motion to suppress his statement to Herrera that "I'll tell you the truth. I tried to break into the house." Therefore, this issue is before the court for all purposes, including the identification of appellant and evaluation of harm. Even assuming *arguendo* that the trial court judge erred in admitting the showup, appellant does not assert that the trial court erred in admitting his inculpatory statement, and, thus, we find no harm.

Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


Publish.