IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00171-CR

 

Billy Wayne Wilson,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2006-606-C2

 



Opinion



 








            A jury convicted Billy Wayne Wilson of
robbery, and, after he pleaded true to an enhancement allegation, assessed his
punishment at thirty years’ imprisonment and a $5,000 fine.  Wilson contends in
three issues that the court erred by: (1) failing to suppress an in-field
showup; (2) instructing the jurors in the punishment charge that they could not
consider sympathy in their deliberations; and (3) allowing the State to add an
enhancement allegation by a separate notice rather than in the indictment.  We
will affirm.

Background

            Wilson was charged with robbing the
complainant Miranda Jones by placing her in fear of imminent bodily injury
while in the course of committing theft.  See Tex. Pen. Code Ann. § 29.02(a)(2) (Vernon 2003).  According
to the evidence, Wilson and Bobby Degrate approached Jones after she parked in
her dormitory parking lot and ordered her into the backseat of her car.  As Wilson drove, Degrate took Jones’s cash and other valuables.  They drove around the Waco area for about twenty minutes before allowing her to leave the car.  Jones went to a
nearby house, and the owner called 9-1-1.  The police located Jones’s car a
short time later and found Wilson and Degrate in it.

In-Field Showup

            Wilson contends in his first issue
that the court erred by failing to suppress an in-field showup[1]
in which Jones identified Wilson as one of the men who committed the offense.

            We make two inquiries in determining
whether a pre-trial identification should be excluded: (1) whether the police
used an impermissibly suggestive pre-trial identification procedure, and (2) if
so, whether, under the totality of the circumstances, there was a very
substantial likelihood of irreparable misidentification.  See Delk v. State,
855 S.W.2d 700, 706 (Tex. Crim. App. 1993); Williams v. State, 243
S.W.3d 787, 789 (Tex. App.—Amarillo 2007, pet. ref’d); Pace v. State,
986 S.W.2d 740, 744 (Tex. App.—El Paso 1999, pet. ref’d).  If the
identification procedure is impermissibly suggestive, we weigh the following
factors “against the corrupting effective of [the] suggestive identification
procedure in assessing reliability under the totality of the circumstances”: (1)
the opportunity of the witness to view the criminal at the time of the crime;
(2) the witness’s degree of attention; (3) the accuracy of the witness’s prior
description of the criminal; (4) the level of certainty demonstrated by the
witness at the confrontation, and (5) the length of time between the crime and
the confrontation.  Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App.
1988) (citing Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243,
2253, 53 L. Ed. 2d 140 (1977) (citing Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972))); accord Loserth v.
State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998); Williams, 243
S.W.3d at 790; Pace, 986 S.W.2d at 744-45.  We may also consider other
relevant factors in evaluating the reliability of the witness’s identification. 
Delk, 855 S.W.2d at 706; Pace, 986 S.W.2d at 745.

            We consider these factors, all issues
of historical fact, deferentially in a light favorable to the trial court's
ruling.  Loserth, 963 S.W.2d at 773; Williams, 243 S.W.3d at 789;
Gilstrap v. State, 65 S.W.3d 322, 327 (Tex. App.—Waco 2001, pet.
ref’d).  The factors, viewed in this light, are then weighed de novo against
“the corrupting effect” of the suggestive pretrial identification procedure.  Loserth,
963 S.W.2d at 773-74; accord Williams, 243 S.W.3d at 789; Gilstrap,
65 S.W.3d at 326-27.

            An in-field showup is generally
considered to be impermissibly suggestive.  See Stewart v. State, 198
S.W.3d 60, 63 (Tex. App.—Fort Worth 2006, no pet.); Pace, 986 S.W.2d at
744; see also Delk, 855 S.W.2d at 706 (presenting single photograph to
complainant “was impermissably [sic] suggestive”); Johnigan v. State, 69
S.W.3d 749, 752 (Tex. App.—Tyler 2002, pet. ref’d) (“a single photograph ‘line
up’ is improperly suggestive”).  But see Williams, 243 S.W.3d at 790
(“it is only ‘possible’ that the [showup] procedure was impermissibly
suggestive”).  We assume without deciding that the showup in Wilson’s case was
impermissibly suggestive and focus on the issue of whether, under the totality
of the circumstances, there was a very substantial likelihood of irreparable
misidentification.  See Delk, 855 S.W.2d at 706; Williams, 243
S.W.3d at 789; Pace, 986 S.W.2d at 744.

            The first factor is the opportunity of
the witness to view the criminal at the time of the crime.  Jones testified
that she noticed two black males as she was entering her dormitory parking lot
around 10:00 p.m.  The parking lot was well-lit.  She parked under a street
light.  The same two males approached her, and one of them told her to get into
backseat of her car.  She testified that she got “a good look” at Wilson both before she parked her car and when he approached.  However, she was ordered to
keep her head down after they got into her car, and she was unable to see the
driver during the twenty minutes they rode around in her car.

            The second factor is the witness’s
degree of attention.  Although no one specifically asked Jones about her
“degree of attention,” the trial court could reasonably infer that she was
attentive to the surrounding circumstances because she testified about noticing
 Wilson and Degrate as she entered the parking lot, she testified about how well-lit
the parking lot was, and she testified that she got “a good look” at Wilson.

            The third factor is the accuracy of
the witness’s prior description of the criminal.  Here, very little testimony
was elicited in the pretrial hearing regarding the accuracy or detail of
Jones’s description of Wilson or Degrate.  Wilson did cross-examine an officer
about Jones’s purported statement to the 9-1-1 operator that Wilson was wearing
a “hoodie.”  The officer testified that he was unaware that she had provided
this information.[2]

            The fourth factor is the level of
certainty demonstrated by the witness at the confrontation.  The record is
unclear on this issue.  Jones apparently had no hesitance in identifying Wilson as the driver, but the officer did not specifically document “the level of
certainty demonstrated.”  She testified at the pretrial suppression hearing and
at trial that she was “100 percent sure” that Wilson and Degrate were the
robbers.  The trial court could have reasonably inferred from this testimony that
Jones identified Wilson on the night in question with a high level of
certainty.

            The last of the listed factors is the
length of time between the crime and the confrontation.  Wilson concedes that
this factor is favorable to the State.

            Finally, we note two other relevant
factors which serve to enhance the reliability of Jones’s out of court
identification.  Wilson was arrested in Jones’s car a short time after it was
reported stolen and Jones’s keys were found in the police car that Wilson was placed in after his arrest.

            Wilson refers to other factors which,
he believes, call into question the reliability of the identification: (1) the
officer “had little formal training” on conducting “a single person showup”;
(2) the officer failed to videotape the showup though he had equipment
available to do so; and (3) the officer failed to tell Jones that the persons
she was about to view may or may not be the perpetrators (as recommended in a
training manual published by the Department of Justice).  The trial court would
have been within its discretion to consider these other factors as bearing on
the reliability of Jones’s identification of Wilson.  See Delk, 855
S.W.2d at 706; Pace, 986 S.W.2d at 745.  However, the court would
likewise have been within its discretion to conclude under the totality of the
circumstances that these factors did not lead to a “very substantial likelihood
of irreparable misidentification.”  See Delk, 855 S.W.2d at 706; Williams,
243 S.W.3d at 789; Pace, 986 S.W.2d at 744.

            Viewed deferentially in a light
favorable to the trial court's decision, the first, second, fourth and fifth
listed factors (and the two additional factors we noted) support the court’s
determination that, under the totality of the circumstances, there was no substantial
likelihood of irreparable misidentification.  See Delk, 855 S.W.2d at
707-08; Williams, 243 S.W.3d at 791; Stewart, 198 S.W.3d at 63; Pace,
986 S.W.2d at 745.  Accordingly, we overrule Wilson’s first issue.

Jury Instruction

            Wilson contends in his second issue
that the court erred by instructing the jurors in the punishment charge that
they should not consider sympathy in their deliberations because this prevented
the jurors from giving effect to his mitigating evidence.  He cites decisions of
the United States Supreme Court and from other states to support this
contention.

            Wilson refers to familiar death
penalty jurisprudence that punishment charges in such cases must allow jurors “to
give meaningful effect or a ‘reasoned moral response’ to a defendant’s mitigating
evidence.”  See, e.g., Abdul-Kabir v. Quarterman, ___ U.S. ___, 127 S. Ct. 1654, 1675, 167 L. Ed. 2d 585 (2007).  This requirement has been embraced by a
majority of the justices of the Supreme Court since at least 1989 when it was
addressed in the Court’s decision in Penry v. Lynaugh.  492 U.S. 302, 328, 109 S. Ct. 2934, 2951, 106 L. Ed. 2d 256 (1989) (quoting Franklin v. Lynaugh,
487 U.S. 164, 184, 108 S. Ct. 2320, 2333, 101 L. Ed. 2d 155 (1988) (O’Connor,
J., concurring) (quoting California v. Brown, 479 U.S. 538, 545, 107 S. Ct. 837, 841, 93 L. Ed. 2d 934 (1987) (O’Connor, J., concurring))).

            However, Wilson’s contention was
answered by the Supreme Court the year after it decided Penry.  In Saffle
v. Parks, 494 U.S. 484, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990), the
Court considered the propriety of an “antisympathy instruction” similar to the
one employed in Wilson’s case.[3]  In Saffle,
the trial court instructed the jurors in its punishment charge, “You must avoid
any influence of sympathy, sentiment, passion, prejudice, or other arbitrary
factor when imposing sentence.”  Id. at 487, 110 S. Ct. at 1259.  In a
federal habeas challenge, Parks argued that this “antisympathy instruction”
violated the Eighth Amendment.  Id. at 486, 110 S. Ct. at 1259.  The
Court rejected Parks’s claim both on its merits and under federal habeas
principles.  Id.

            In rejecting Parks’s claim on its
merits, the Court stated, “Parks argues that the Eighth Amendment, as
interpreted in 1983, required, and still requires, that jurors be allowed to
base the sentencing decision upon the sympathy they feel for the defendant
after hearing his mitigating evidence.  We disagree  .  .  .  .”  Id. at 489, 110 S. Ct. at 1260-61.  The Court further stated, “We thus cannot say
that the large majority of federal and state courts that have rejected
challenges to antisympathy instructions similar to that given at Parks’ trial
have been unreasonable in concluding that the instructions do not violate the
rule of Lockett and Eddings.”[4]  Id. at 490, 110 S. Ct. at 1261; see also Johnson v. Texas, 509 U.S. 350, 371-72, 113 S. Ct. 2658, 2671, 125 L. Ed. 2d 290 (1993) (“[W]e have not construed the Lockett
line of cases to mean that a jury must be able to dispense mercy on the basis
of a sympathetic response to the defendant.  Indeed, we have said that ‘[i]t would
be very difficult to reconcile a rule allowing the fate of a defendant to turn
on the vagaries of particular jurors’ emotional sensitivities with our
longstanding recognition that, above all, capital sentencing must be reliable,
accurate, and nonarbitrary.’”) (quoting Saffle, 494 U.S. at 493, 110 S. Ct. at 1263).

            The Supreme Court has expressly rejected
the argument advanced by Wilson.  While other states may have adopted the
position he advances, we decline to do so.  Accordingly, we overrule Wilson’s second issue.

Enhancement Allegation

            Wilson contends in his third issue
that the court erred by allowing the State to add an enhancement allegation by
a separate notice rather than in the indictment.  He concedes that the notice
given by the State is permissible under current Texas precedent, but he argues
that this line of cases has been overruled sub silentio by Jones v.
United States, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999), and
its progeny.[5]  We
disagree.

            One year before Jones, the
Supreme Court unequivocally held that a recidivist allegation which enhances
punishment because of a prior conviction is not an element of an offense and
need not be pleaded in an indictment.  See Almendarez-Torres v. United States, 523 U.S. 224, 226-27, 118 S. Ct. 1219, 1222, 140 L. Ed. 2d 350 (1998).

            In Jones, the Supreme Court
held that the three subdivisions of the federal carjacking statute, which
establish a base punishment range of up to fifteen years’ imprisonment and
consecutively higher penalties if a person suffers serious bodily injury or
death as a result of the offense, define three distinct offenses.[6] 
See Jones, 526 U.S. at 229, 119 S. Ct. at 1217.  The Court concluded
that the latter two subdivisions, which involve serious bodily injury or death,
are elements of distinct offenses, rather than sentencing considerations, and
thus must be alleged in the indictment and proved beyond a reasonable doubt.  Id. at 251-52, 119 S. Ct. at 1228.

            In Apprendi v. New Jersey, the
Court cited a footnote from Jones and stated, “Other than the fact of
a prior conviction, any fact that increases the penalty for a crime beyond the
prescribed statutory maximum must be submitted to a jury, and proved beyond a
reasonable doubt.”  530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435
(2000) (emphasis added) (citing Jones, 526 U.S. at 243 n.6, 119 S. Ct. at 1224 n.6).  Disregarding the italicized exception quoted above, Wilson contends
that the enhancement allegation is an element of the offense which should have
been alleged in the indictment because the allegation increased the penalty for
his crime beyond the prescribed statutory maximum.

            Wilson seizes on a quote from the
Supreme Court’s later decision in Ring v. Arizona to support his
argument.  536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).  The quoted
excerpt on which he relies is as follows, “If a State makes an increase in a
defendant’s authorized punishment contingent on the finding of a fact, that
fact-no matter how the State labels it-must be found by a jury beyond a
reasonable doubt.”  Id. at 602, 122 S. Ct. at 2439.  However, Wilson
ignores a previous statement by the Court, “[U]nder the Due Process Clause of the
Fifth Amendment and the notice and jury trial guarantees of the Sixth
Amendment, any fact (other than prior conviction) that increases the
maximum penalty for a crime must be charged in an indictment, submitted to a
jury, and proven beyond a reasonable doubt.”  Id. at 600, 122 S. Ct. at
2439 (emphasis added) (quoting Jones, 526 U.S. at 243 n.6, 119 S. Ct. at 1224 n.6).

            Although Wilson cites several
statements in which various justices of the Supreme Court have questioned
whether Almendarez-Torres should be revisited, that Court has not
retreated from the principle that the fact of a prior conviction is not an
element of an offense and need not be pleaded in an indictment.  See
Almendarez-Torres, 523 U.S. at 226-27, 118 S. Ct. at 1222; see also Ring,
536 U.S. at 600, 122 S. Ct. at 2439; Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-63; Jones, 526 U.S. at 243 n.6, 119 S. Ct. at 1224 n.6.

            The Fourteenth Court has rejected an
identical complaint as Wilson’s in an unpublished opinion.  See Heathcock v.
State, No. 14-02-00899-CR, 2003 WL 21710468, at *2 (Tex. App.—Houston [14th Dist.] July 24, 2003, pet. ref’d); see also Rayford v. State, 125
S.W.3d 521, 533 (Tex. Crim. App. 2003) (Apprendi does not require the
State to allege the death penalty special issues in the indictment).

            Under Texas law, the State must give
notice of enhancement allegations, but such notice need not be contained in the
indictment.  See Brooks v. State, 957 S.W.2d 30, 33-34 (Tex. Crim. App. 1997); Mayfield v. State, 219 S.W.3d 538, 539-40 (Tex. App.—Texarkana
2007, no pet.); Williams v. State, 172 S.W.3d 730, 734 (Tex. App.—Fort Worth 2005, pet. ref’d).

            Here, the State gave written notice of
its intent to seek an enhanced punishment because of Wilson’s prior felony
conviction.  This notice satisfied the requirements of Brooks, and the
Sixth Amendment[7]
right to jury trial does not require anything different.  See Heathcock,
2003 WL 21710468, at *2; see also Rayford, 125 S.W.3d at 533. 
Accordingly, we overrule Wilson’s third issue.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurs in the judgment which affirms Wilson’s conviction.  A
separate opinion will not issue.)

Affirmed

Opinion delivered and
filed July 9, 2008

Publish

[CRPM]

 









[1]
              A “showup” has been defined as
a “pretrial identification procedure in which a suspect is confronted with a
witness to or the victim of a crime.  Unlike a lineup, a showup is a one-on-one
confrontation.”  Black’s Law Dictionary
1413 (8th ed. 2004).





[2]
              A recording of the 9-1-1 call
was not offered in evidence during the pretrial hearing.  It was admitted at
trial.  The recording indicates that Jones told the 9-1-1 operator, via the
homeowner who called 9-1-1 for her, that Wilson was wearing a sweatshirt with a
hood.





[3]
              In Wilson’s case, the court
instructed the jurors, “Do not let personal bias, prejudice, sympathy or
resentment on your part, or any such personal emotion on your part, enter into
your deliberations or affect your verdict in this case.”

                





[4]
              See Eddings v. Oklahoma, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978).





[5]
              Wilson’s brief assigns
preeminence to the Supreme Court’s decision in Apprendi v. New Jersey,
530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), which is perhaps the
Court’s most-cited decision in this area.  Nevertheless, Jones came
first, and served as a foundation for the Court’s decision in Apprendi.

 





[6]
              The federal carjacking
statute, 18 U.S.C. § 2119, provides:

 

Whoever, with the intent to cause death or serious
bodily harm takes a motor vehicle that has been transported, shipped, or
received in interstate or foreign commerce from the person or presence of
another by force and violence or by intimidation, or attempts to do so, shall—

 

(1) be fined under this title or imprisoned not
more than 15 years, or both,

 

(2) if serious bodily injury (as defined in
section 1365 of this title, including any conduct that, if the conduct occurred
in the special maritime and territorial jurisdiction of the United States,
would violate section 2241 or 2242 of this title) results, be fined under this
title or imprisoned not more than 25 years, or both, and 

 

(3) if death results, be fined under this title or
imprisoned for any number of years up to life, or both, or sentenced to death.

 

18 U.S.C.S. § 2119 (LexisNexis Supp. 2007).





[7]
              Wilson correctly characterizes
his complaint as constitutional in nature.  Jones and its progeny are
grounded in the Sixth Amendment right to trial by jury.  See Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856, 863-64, 166 L. Ed. 2d 856 (2007).