NO. 07-06-0490-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 22, 2008

_____

ANDRES CANTU, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-407805; HON. BRADLEY S. UNDERWOOD, PRESIDING

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Andres Cantu appeals from his conviction by jury of the offense of aggravated robbery and the resulting sentence of imprisonment for a term of eighteen years in the Institutional Division of the Texas Department of Criminal Justice. By his sole issue on appeal, appellant contends that the trial court erred when it permitted an in-court identification of appellant that was tainted by a prior impermissibly suggestive identification procedure. We disagree, and affirm the trial court's judgment.

Background

Via a December 2004 indictment, appellant was charged with aggravated robbery.[1] The indictment also contained an enhancement paragraph, setting forth appellant's prior felony conviction for possession of marijuana. On appellant's plea of not guilty, this matter proceeded to trial.

The State's evidence showed appellant robbed a convenience store in Idalou, Texas.[2] The State presented its case through witness testimony, photographs, a digital recording from the convenience store video system, and items located in appellant's vehicle. The evidence established that during the late evening hours of November 19, 2004, a store clerk was working the graveyard shift at the convenience store. The clerk was cleaning the deep fryer when she turned around and saw an individual, identified at trial as appellant, walk around the open counter with what appeared to be a crowbar or some sort of "black stick."[3] Appellant had something that "looked like two scarves" tied around his forehead and around his nose and mouth. The clerk testified that she started panicking, telling herself that she was "fixing to get robbed." Appellant threatened her and at trial, the clerk agreed that she "immediately got scared" and thought if she didn't comply with appellant's request, he would hurt her. The clerk opened the register, appellant

---

[1] *See* Tex. Penal Code Ann. § 29.03 (Vernon 2003). This offense is a first degree felony, punishable by imprisonment for life or for any term of not more than 99 years or less than 5 years and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.32 (Vernon 2003).

[2] Appellant does not challenge the sufficiency of the evidence supporting his conviction.

[3] Evidence showed the item actually was part of a jack handle.

grabbed money with one hand, had the stick in the other, and looked outside the window to see if anyone was coming in.

As appellant left the store with the money, a regular customer arrived and the clerk indicated to him that she had just been robbed by the individual leaving the store. The customer chased appellant but was unable to catch him. A few minutes later, the police arrived. The customer provided police with a description of the individual, the vehicle he was driving, and his general direction of travel.[4] A short time later, police officers located a gray Jeep matching the description provided by the customer. When officers attempted to stop the vehicle, a high speed chase ensued, ending with the vehicle stopping in a parking lot directly across the street from the convenience store. Officers detained appellant, placed him in a police car, and brought him across the street to the convenience store where the customer was waiting. The customer identified appellant as the person he saw leaving the convenience store. At trial, during a hearing outside the presence of the jury, the customer confirmed that the person in custody was the same person he had seen in the convenience store at the time of the robbery. The customer also made an in-court identification of appellant.

---

[4] At trial, a police officer testified that the clerk described the robber as a Hispanic male wearing a jacket, driving a gray Jeep. The officer testified that the customer gave him the same statement and noted that the Jeep was traveling southbound on FM 400.

After the presentation of the evidence, the jury returned a verdict of guilty of the offense of aggravated robbery and assessed punishment against appellant at confinement for a term of eighteen years.  This appeal followed.[5]

Analysis

Via his sole point of error, appellant contends the trial court erred by permitting the customer's in-court identification because it was tainted by the prior "showup" identification at the scene.

At trial, the court held a hearing outside the presence of the jury to determine whether the customer could offer an in-court identification of appellant.  The customer identified appellant in court and testified that he is the same person he saw come out of the convenience store on the night of the robbery.  He agreed  that the fact that the police showed him the person in custody within ten to fifteen minutes of the robbery would not affect his ability to point out the person he saw come out of the store that night.  He testified that "[w]hen the person came out of [the store], he was personally looking at me in the face.  When I got out of my pickup, I was looking at him because he looked like he was nervous and he had a limp to his side."  The customer also stated that he "looked straight at the individual and the individual looked right back at him."  The prosecutor inquired whether the customer's identification of appellant as the robber was impacted by his look at appellant in the police car after appellant was detained and brought to the

_____

[5] The record indicates that the Court of Criminal Appeals granted appellant out-of-time appeal.  Appellant properly filed his notice of appeal as directed by the Court of Criminal Appeals.

convenience store. In response, the customer said, "I can look at him now and tell . . . . He looks the same right here." The customer also stated that he got the same look at appellant during the showup as he did when he saw appellant come out of the store and that appellant looked "the same when he was in the officer's car and the same as he looks now."

At the close of that hearing, the trial court stated "[t]he Court's position is that the witness had an opportunity to view the defendant at the time the he came out of the store. The witness testified that the defendant was looking right at him when he was removing some covering from his face, that he had opportunity to look at him from that point until the time that he got in his car." The court also noted that the customer was very clear in his testimony that the defendant looked the same in the courtroom as he did when he came out of that store and the same as he did when he looked at him in the police car. The court found that the customer's in-court identification was not tainted by the possibly impermissive showup identification at the scene and permitted the customer to identify the defendant in the courtroom.

*Standard of Review*

Whether the trial court erred in admitting into evidence a witness's identification of the accused involves a mixed question of law and fact. *Williams v. State,* 243 S.W.3d 787, 789 (Tex.App.–Amarillo 2007, pet. ref'd), *citing Loserth v. State,* 963 S.W.2d 770, 772 (Tex.Crim.App. 1998). Great deference is given to the trial court's resolution of the historical facts pertinent to the case; however, whether the historical facts render the

5

identification unreliable is reviewed *de novo*. *Williams,* 243 S.W.3d at 789. Thus, the appellate court need not grant deference to the trial court's determination that the "historical facts compelled or supported the decision to admit or exclude the evidence." *Id., citing Benitez v. State,* 5 S.W.3d 915, 921 (Tex.App.–Amarillo 1999, pet. ref'd).

*Application*

Appellant's contention here requires a two-step analysis: (1) whether the police used an impermissibly suggestive pre-trial identification procedure, and (2) if so, whether, under the totality of the circumstances, there was a very substantial likelihood of irreparable misidentification. *Wilson v. State,* 267 S.W.3d 215, 217 (Tex.App.–Waco 2008, no pet.); *Williams,* 243 S.W.3d at 789.

The first inquiry in determining whether appellant's due process rights were violated is whether the police used an impermissibly suggestive procedure in obtaining the out-of-court identification. *Williams,* 243 S.W.3d at 789. A "one person showup" may be unnecessarily suggestive and conducive to irreparable misidentification. *Wilson v. State,* 267 S.W.3d at 217-18, *citing Delk v. State,* 855 S.W.2d 700, 706 (Tex.Crim.App. 1993). However, whether this identification procedure violates due process depends on the totality of the circumstances surrounding it. *Williams,* 243 S.W.3d at 790, *citing Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Among the factors we may consider when determining this issue are: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty when

6

making the identification; and (5) the length of time between the crime and identification. *Williams,* 243 S.W.3d at 790, *citing Neil,* 409 U.S. at 199.

For purposes of this opinion, we will assume without deciding that the showup here was impermissibly suggestive and focus on the issue of whether, under the totality of the circumstances, there was a very substantial likelihood of irreparable misidentification. *Wilson,* 267 S.W.3d at 217, *citing Delk,* 855 S.W.3d at 706; *Williams,* 243 S.W.3d at 789.

The record reflects the customer observed appellant leaving the store and appellant looked "right at him" and he looked "right back." Even though it was at night, there is no evidence to indicate that the customer could not have seen appellant. Second, the customer observed appellant for one to two minutes from the time appellant stepped out of the doors until he got into his vehicle. Appellant was looking straight at the customer the entire time he traveled from the door of the store to his Jeep. Third, the customer provided a reasonably accurate description of appellant that comported with the clerk's description. The customer stated that he was a "Spanish male," weighed about 190 pounds, was wearing a jacket and black britches, had his right hand in his pocket and had a black mask or bandanas around his face that he was pulling down when the customer saw him. He also noted that appellant was limping with his right hand in his pocket on his side and his vehicle was a gray four-door Jeep. At trial, the prosecutor asked the customer if he gave a description of the person he saw coming out of the store and the customer testified, "Yes. He's right here in the courtroom. He's in a green T-shirt, stripes, white." During further questioning, the customer again identified appellant as the person he saw come out of the store. At the showup, the customer was able to identify appellant as the individual leaving

7

the store within a minute of seeing him in the police car. Not more than fifteen minutes elapsed between the time the customer saw appellant leaving the scene of the robbery and the time of the showup identification.

Viewed deferentially in a light favorable to the trial court's decision, the listed factors support the court's determination that, under the totality of the circumstances, there was no substantial likelihood of irreparable misidentification. *Wilson,* 267 S.W.3d at 219.

We overrule appellant's sole issue on appeal and affirm appellant's conviction and sentence.


James T. Campbell
Justice

Do not publish.