

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-11-00270-CR, 07-11-00271-CR

STEVE RODRIGUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 390th District Court
Travis County, Texas
Trial Court No. D-1-DC-10-202173, D-1-DC-10-500217;
Honorable Julie H. Kocurek, Presiding

June 26, 2013

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

By separate indictments, appellant Steve Rodriguez was charged with two aggravated robberies. The cases were tried together, a jury found him guilty of the charged offenses and the trial court assessed punishment at twenty-eight years in prison in each case. The sentences run concurrently. In both cases, the court made a deadly weapon finding. Appellant presents six issues on appeal. We will affirm both judgments.

Background

Testimony showed appellant and his brother Servando Rodriguez lived with their grandmother at a residence in Austin. From the late evening of April 16 into the early morning of April 17, 2010, appellant and Servando, their friends John Niess and his brother Frank Niess, appellant's girlfriend Kaitlyn Kretschmer, and Frank's girlfriend Erin Moody, were together at the residence. Appellant's grandmother was out of town.

During the evening, John began talking about "hitting a lick"--an expression for committing a robbery.[1] Whether appellant took part in this conversation is unclear from the testimony. According to Erin, Frank obtained the keys to her red Ford F-150 four-door pickup and the four men left the residence together "[a]round 2:00 or 3:00 in the morning."

Michael Bishop was the victim of the first robbery. From his testimony, the jury heard that Bishop's girlfriend worked at an Austin nightclub. Between 5:00 and 5:30 a.m. on April, 17, he waited in his vehicle outside the club for her to complete work. He passed the time playing a video game on his cellphone. Suddenly the driver's door of his vehicle opened and a male stood over Bishop with a shotgun. The gunman "bumped" the barrel of his weapon at Bishop's face demanding his money and wallet. A second male opened the passenger door of the vehicle and began looking through the glove box, the center console, and the back seat. Bishop noticed a large knife lying on the passenger seat of his vehicle. The individual holding a shotgun also took Bishop's cellphone.

---

[1] *See Broadnax v. State,* No. AP-76,207, 2011 Tex. Crim. App. Unpub. Lexis 920, at *2 (Tex.Crim.App. Dec. 14, 2011) (not designated for publication).

By the time Bishop concluded the two had taken most of his belongings, he heard a voice from behind his car shouting to the two perpetrators, "Hurry up, fool." Bishop looked over his shoulder and saw a red four-door Ford or Dodge pickup truck with black trim behind his car. A person in the back seat held the pickup's door open. Bishop described this individual as a young Hispanic male with short hair. According to Bishop, "I managed to see him I think fairly well." Bishop also noticed someone in the driver's seat of the pickup. When the person shouted for the two at Bishop's car to hurry, the person with the shotgun told the other perpetrator to grab the ignition key. He obliged. The two then ran back to the pickup as Bishop's girlfriend approached. He motioned her to stay back as the men retreated to the pickup and it sped away. Bishop noted part of the truck's license plate number and someone inside the nightclub telephoned 9-1-1 at Bishop's request.

Eddie Arpero and his cousin Raando Arpero were the victims of the second robbery. Eddie and Raando worked in the warehouse of an Austin printing company. About 6:00 a.m. the two picked up breakfast at a fast food restaurant and drove to work in Eddie's truck. They parked and before they left the vehicle a "reddish" Ford four-door pickup pulled behind them. Two men came from the pickup and ran toward Raando. One had a shotgun. Cocking the weapon, he commanded Raando to get on the ground. The other man put a hand gun to Eddie's head and told him to get on the ground. They took Eddie's keys and cellphone, and the stereo from his truck. Raando's wallet was also taken.

Eddie could see one of the men holding the shotgun to Raando's head. As Eddie watched, the men returned to the pickup. A person then left the pickup and

3

placed Raando in handcuffs. He was left face down with his hands cuffed behind his back. Raando identified appellant as the person placing him in handcuffs. After the pickup departed, the victims contacted security guards at a location across the street and police were notified.

Meanwhile Moody and Kretschmer went for a drive. They returned to appellant's residence after appellant called Moody and reported he and the others were home.

Through Bishop's cellphone service provider, officers obtained the general location of the stolen phone.[2] Thus, around 6:15 a.m. they were led to a location on Vassar Road where a red Ford pickup was parked. The hood of the vehicle felt warm to the touch of a responding officer. Neighbors directed officers to a particular address and a SWAT team was summoned.

John noticed police outside the house and awakened appellant. John apologized to Moody without stating a reason. When Moody asked why the police were outside John responded, "It's best that you don't know." Responding to a police "call out," the six occupants of the house exited and were taken into custody. Upon subsequent execution of a search warrant at the house, police located Raando Arpero's wallet and the stereo taken from Eddie Arpero's truck.

---

[2] In describing the electronic location procedure, the terms "geolocate" and "ping" were used at trial but without significant explanation. On proper authority, a wireless service provider may signal or ping a cellphone directing the phone to compute its current GPS coordinates and communicate the data to the provider for transmission to law enforcement personnel. *In re Application of the United States,* No. 10-2188-SKG, 2011 U.S. Dist. Lexis 85638, at *3 (D. Md. Aug. 3, 2011); 18 U.S.C.A. § 2703(c)(1)(A) (West Supp. 2013).

4

Bishop and Raando Arpero identified appellant as a participant in the robberies, through photographic lineups. He was indicted for aggravated robbery. Before trial, appellant filed a motion seeking to suppress "appellant's identification." The trial court denied the motion after a hearing.

Analysis

By issues one and two, appellant argues the photographic lineups in which Bishop and Raando Arpero identified him were impermissibly suggestive.

Whether the trial court erred in admitting into evidence a witness's identification of the accused involves a mixed question of law and fact. *Loserth v. State,* 963 S.W.2d 770, 772 (Tex.Crim.App. 1998); *Williams v. State,* 243 S.W.3d 787, 789 (Tex.App.--Amarillo 2007, no pet.). The factors used to determine whether an impermissibly suggestive identification procedure gives rise to a substantial likelihood of irreparable misidentification are treated as historical issues of fact and are viewed in the light most favorable to the trial court's ruling. *Loserth,* 963 S.W.2d at 773. We, therefore, afford great deference to the trial court's resolution of the historical facts pertinent to the case; however, whether the historical facts render the identification unreliable is reviewed *de novo. See id.* at 773-74; *Williams,* 243 S.W.3d at 789; *Tijerina v. State,* 334 S.W.3d 825, 837 (Tex.App.--Amarillo 2011, pet. refused).

"An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification." *Luna v. State,* 268 S.W.3d 594, 605 (Tex.Crim.App. 2008). A defendant who claims a pretrial identification and potentially tainted in-court identification are inadmissible must show that the

5

procedures used were impermissibly suggestive and if so the procedures gave rise to a substantial likelihood of irreparable misidentification. *Barley v. State,* 906 S.W. 2d 27, 33 (Tex.Crim.App. 1995); *Niess v. State,* No. 03-11-00213-CR, No. 03-11-00214-CR, No. 03-11-00215-CR, No. 03-11-00216-CR, No. 03-11-00217-CR, 2012 Tex. App. Lexis 5063, at *11 (Tex.App.--Austin June 21, 2012, no pet.) (mem. op., not designated for publication). The test requires consideration of the totality of circumstances. *Ibarra v. State,* 11 S.W.3d 189, 195 (Tex.Crim.App. 1999). The linchpin for determining the admissibility of identification testimony is reliability. *Id.* A defendant bears the burden of establishing by clear and convincing evidence that the pretrial identification procedure was impermissibly suggestive. *Barley,* 906 S.W.2d at 33-34; *Harris v. State,* 827 S.W.2d 949, 959 (Tex.Crim.App. 1992).

Concerning the first prong of the analysis, the manner in which the pretrial identification was conducted may create suggestiveness. *Barley,* 906 S.W.2d at 33. Illustrative is an officer identifying the suspect or disclosing the suspect's inclusion in a photographic lineup. *Id.* The content of the photographic lineup may also create suggestiveness, if the suspect is the only individual closely resembling the pre-identification description. *Id.* The same is true if the appearance of other participants is greatly dissimilar from the suspect. *Withers v. State,* 902 S.W.2d 122, 125 (Tex.App.--Houston [1st Dist.] 1995, pet. refused) (citing *United States v. Wade,* 388 U.S. 218, 232-33, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). However, "neither due process nor common sense" requires that the photographs in a lineup depict individuals with identical physical characteristics. *Herrera v. State,* 682 S.W.2d 313, 319 (Tex.Crim.App. 1984).

6

Identification by Bishop

Appellant argues both the procedure and the content of the photographic lineup shown Michael Bishop were impermissibly suggestive.

*Content*

Appellant argues the pretrial identification procedure involving Bishop was contrary to the recommendations of the United States Department of Justice because Detective Hogue, who created the lineup, used fillers who matched a booking photograph of appellant he selected rather than fillers matching the description Bishop gave of the perpetrator. However, appellant does not show us, and we are unaware of, any authority compelling compliance with DOJ recommendations. *See Pacheco v. State,* No. 04-06-0453-CR, 2007 Tex. App. Lexis 2744, at *11 (Tex.App.--San Antonio 2007, pet. refused) (rejecting argument that failure to adhere to DOJ guidelines recommending sequential photographic presentation tainted identification procedure).

Appellant further asserts his photograph "stands out" in the lineup for several reasons. He is the only subject wearing a dark shirt and "seems" nearer the camera; the subjects in position numbers two, three, and four appear larger than appellant; the subjects in positions two through five are wearing T-shirts "distinctly brighter and whiter than appellant's" with "neat" collars; according to Detective Hogue appellant's photograph depicts hair on the side of his face while the subject in the lineup position preceding appellant has none; another person appearing in the lineup is darker complected than appellant; and appellant is the only participant in the array with a large mark or tattoo visible on his neck.

7

To create the lineup, Detective Hogue testified he used a computer program to search for appellant's most recent and clearest booking photograph. He then "systematically" searched for five other people "with similar descriptions, builds, facial characteristics" as appellant. The record includes a copy of the photographic array. It consists of six similar-appearing males of about the same age. Each presents closely cropped hair and a degree of facial hair in the form of a mustache and goatee. The facial skin condition of each is relatively clear and similar. Each wears a T-shirt. According to the testimony of appellant's expert on eyewitness memory, the lineup from which Bishop identified appellant was "a pretty good job of achieving similarity."

Impermissible suggestiveness occurs when the photographic identification procedure in some manner is so defective that it indicates or suggests the photograph the witness should identify. *Ward v. State,* 474 S.W.2d 212, 216 (Tex.Crim.App. 1985). Unmistakably there is diversity in the appearances of the lineup's subjects. But due process does not require identical appearances. *Luna v. State,* 268 S.W.3d 594, 607-08 (Tex.Crim.App. 2008); *Buxton v. State,* 699 S.W.2d 212, 216 (Tex.Crim.App. 1985). It is enough that the lineup present individuals fitting a rough description of the suspect. *Wilson v. State,* 15 S.W.3d 544, 553 (Tex.App.--Dallas 1999, pet. refused).

*Manner of Presentation*

Detective Turner used the lineups prepared by Detective Hogue. From the lineup she presented, Bishop identified appellant. In challenging the manner of presentation, appellant argues police suggested his photograph was included in the array. In support, he explains that on the day of the offense police notified Bishop they

had located the suspects' vehicle and "were gaining access to the property where they believed that the people that robbed [him] were at"; Detective Turner did not tell Bishop appellant was not included in the array; Detectives Hogue and Turner had minimal experience in conducting non-suggestive lineups; and recommended DOJ warnings were not given.

Bishop testified he could not clearly recall the instructions he was given before he viewed the lineup. But he was not told whom to select. Detective Turner testified when she presented the photographs to Bishop, she did not know which photograph was the suspect's. Finally, appellant does not demonstrate how the level of training of Detectives Hogue and Turner or the absence of recommended DOJ warnings could have caused an impermissibly suggestive pretrial identification procedure.

We conclude this record does not contain clear and convincing proof that the pretrial identification procedure through which Bishop identified appellant was impermissibly suggestive.

Identification by Raando Arpero

Turning to his assertion that the photographic arrays shown Raando Arpero were impermissibly suggestive, appellant urges without further elaboration the previously discussed arguments advanced as to the lineup shown Bishop. Appellant adds that suggestiveness was heightened in the presentation made to Raando Arpero because the lineups were shown simultaneously or as "6-pack lineups." Detective Turner testified it is possible a presenter knowing a suspect's identity could be suggestive

9

without awareness.  On cross-examination, Detective Hogue testified he preferred a sequential lineup.

Raando Arpero signed the following admonition before viewing the lineup from which he identified appellant:

> In a moment, you will be shown a group of photographs.  This group of photographs may or may not contain a picture of the person or persons who committed the crime now being investigated.  Keep in mind that hairstyles, beards and moustaches may be easily changed.  Also, photographs may not always depict the true complexion of a person--it may be lighter or darker than shown in the photo.  Pay no attention to any markings or numbers that may appear on the photo or any other differences in the type of style of the photographs.  When you have looked at all the photos, tell me whether or not you see the person or persons who committed the crime.  Do not tell other witnesses that you have or have not identified anyone.

While it may be argued the preferable practice is a blind, sequential presentation,[3] appellant has not shown case or statutory authority mandating such a procedure or that failure to do so, without more, results in an impermissibly suggestive procedure.  This record does not sufficiently demonstrate that the pretrial photographic lineup procedure through which Raando Arpero identified appellant was impermissibly suggestive.

---

[3] *See Stephenson v. State,* 226 S.W.3d 622, 626 (Tex.App.--Amarillo 2007, no pet.) (citing Pat Priest, "Eyewitness Identification and the Scientific Method," 65 *Tex. B.J.* 974, 978 (2002)).  While not applicable here, the Legislature has enacted a statue providing in part that the written policy adopted by a law enforcement agency regarding the administration of a photographic lineup procedure must address procedures for administering a photographic array in a blind manner or in a manner consistent with proven practices designed to prevent opportunities to influence the witnesses.  Tex. Code Crim. Proc. Ann. art. 38.20 § 3(c)(2)(F) (West Supp. 2012) (statute effective Sept. 1, 2011).

Finding the pretrial lineup procedure through which Bishop and Raando Arpero identified appellant was not impermissibly suggestive in content, manner of presentation, or in the totality of circumstances, we overrule appellant's first and second issues.

Because appellant did not demonstrate by clear and convincing evidence the two victims identified him through an impermissibly suggestive lineup, we need not address his third and fourth issues, asserting there was a substantial likelihood of misidentification in the victims' in-court identifications. Tex. R. App. P. 47.1; *Barley,* 906 S.W.2d at 34 ("Holding that no impermissibly suggestive procedure was utilized, the need to assay whether under the circumstances it created a substantial likelihood of misidentification is obviated"); *Niess,* 2012 Tex. App. Lexis 5603, at *19 (finding appellant failed to establish pretrial identification procedures were impermissibly suggestive, court was not required to address whether procedures created substantial likelihood of misidentification).

Appellant next argues the evidence was insufficient to establish he was a party to the robbery of Bishop. Within this issue, appellant further claims the evidence was insufficient to prove he was criminally responsible for the deadly-weapon aggravating element. The jury was charged on the law of parties and there is no complaint of the charge.

In reviewing the sufficiency of the evidence supporting a conviction, we view all of the evidence in the light most favorable to the court's judgment to determine whether any rational trier of fact could have found the essential elements of the crime beyond a

11

reasonable doubt. *Brooks v. State,* 323 S.W.3d 893 (Tex.Crim.App. 2010) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton,* 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State,* 270 S.W.3d 564, 568 (Tex.Crim.App. 2008). Thus, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State,* 214 S.W.3d 9, 16-17 (Tex.Crim.App. 2007). We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson,* 443 U.S. at 326; *Clayton,* 235 S.W.3d at 778.

A person commits robbery if, "in the course of committing theft . . . and with intent to obtain or maintain control of the property," he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 29.02(a)(2) (West 2011). A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03(a) (West Supp. 2012). A person commits aggravated robbery if he commits robbery and "uses or exhibits a deadly weapon." Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). A

12

firearm, the use of which was alleged here in the indictment, is a deadly weapon *per se*. Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp. 2012).

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code Ann. § 7.01(a) (West 2011). A person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02(a)(2) (West 2011). When the accused is not the principal actor, the State must prove conduct constituting an offense plus an act committed by the defendant with intent to promote or assist such conduct. *Beier v. State,* 687 S.W.2d 2, 3 (Tex.Crim.App. 1985); *Miller v. State,* 83 S.W.3d 308, 313 (Tex.App.--Austin 2002, pet. refused). Evidence is sufficient to sustain a conviction under the law of parties if it shows the defendant was physically present at the commission of the offense and encouraged the commission of the offense either by words or by other agreement. *Tarpley v. State,* 565 S.W.2d 525, 529 (Tex.Crim.App. 1978); *Miller,* 83 S.W.3d at 313-14.

Concerning party liability for the use or exhibition of a deadly weapon as an element of aggravated robbery, the record must contain evidence that the defendant participated in the robbery before, while, or after a deadly weapon was displayed, and did so with awareness the deadly weapon would be, was being, or was used or exhibited during the offense. *Boston v. State,* No. 03-10-0399-CR, 2012 Tex. App. Lexis 5240, at *14-15 n.7 (Tex.App.--Austin June 27, 2012, pet granted). A factfinder

13

making a determination of party participation by a defendant may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant showing an understanding and common design to commit the offense. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App. 1996) (op. on reh'g).

From the testimony of Moody and Kretschmer, the jury rationally could have determined beyond reasonable doubt that appellant was among the four men who left the residence in Moody's red Ford four-door pickup. Recall, Moody testified it was appellant who called to tell her they had returned to the residence. Bishop identified appellant as the man seated in the back seat of the vehicle when he was robbed.[4] He also testified that man was the person who urged the weapon-wielding robbers to "hurry up." The jury's conclusion appellant was thereby acting with an intent to promote or assist the commission of Bishop's robbery, and thereby encouraged, directed, aided, or attempted to aid the others, is supported by the evidence the men left the residence after conversation about "hitting a lick," and the evidence two of the participants left the vehicle armed with a shotgun and a large knife after they drove up behind Bishop's parked car. The jury also had available for its consideration events occurring after the Bishop robbery, including the later robbery of the Arperos. Raando Arpero identified appellant as an active participant in that robbery, during which a shotgun again was used to threaten or place the victims in fear of imminent bodily injury or death.

On this record, a rational juror could have believed and found beyond a reasonable doubt that appellant encouraged, directed, aided, or attempted to aid the

---

[4] The involvement of the other three participants in the robbery was more direct: one drove the vehicle, the other two directly accosted Bishop.

14

robbery of Bishop while a shotgun was displayed and appellant was aware that a shotgun was being used in the commission of the offense. We overrule appellant's fifth issue.

By his sixth issue, appellant asserts the deadly weapon finding should be deleted from the written judgment in both cases because the jury made no affirmative deadly weapon finding.

On the factfinder's affirmative finding that a defendant used or exhibited a deadly weapon during the commission of a felony offense, or was a party to the offense and knew that a deadly weapon would be used or exhibited, the trial court shall enter the finding in the judgment. Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2012). The judgments here each contain the following "special findings or orders": "The JURY FINDS Defendant used or exhibited a deadly weapon, namely, a FIREARM during the commission of a felony offense or during immediate flight there from (sic) or was a party to the offense and knew that a deadly weapon would be used or exhibited." (Capitalization in original).

The indictments charged appellant with the aggravated robberies of Bishop and Raando Arpero through the "use or exhibit[ion] of a deadly weapon, to wit: a firearm and a knife." The charge instructed the jury on the law of parties. The application paragraph permitted a guilty finding if appellant acting primarily or "as a party to the offense . . . while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten[ed] or place[ed] [Bishop] in fear of imminent bodily injury or death, and a deadly weapon was used or

15

exhibited, to-wit: a firearm or a knife[.]"  In the case alleging Raando Arpero was the victim, the application paragraph was identical to that concerning the robbery of Bishop except the deadly weapon was limited to a firearm.  In both cases, the jury returned a general verdict finding appellant "guilty of the offense of Aggravated Robbery."

An affirmative deadly weapon finding is authorized against a defendant who did not use or exhibit a deadly weapon during the commission of the offense provided he was a party to an offense where a deadly weapon was used or exhibited and knew a deadly weapon would be used or exhibited.  *Sarmiento v. State,* 93 S.W.3d 566, 569 (Tex.App.--Houston [14th Dist.] 2002, pet refused) (op. on mot. for en banc reh'g).

As a party to the offense appellant could not be convicted without proof he intended "to promote or assist the commission of the offense."  Tex. Penal Code Ann. § 7.02(a)(2) (West 2011).   The indictments charged appellant with the offense of aggravated robbery and use of a deadly weapon was alleged as an element of the offense.  For the jury to find appellant guilty, even as a party, it first had to believe beyond reasonable doubt that appellant knew a deadly weapon would be used in the commission of the offense.  *Sarmiento*, 93 S.W.3d at 570; *see also Hurd v. State,* 322 S.W.3d 787, 792-93 (Tex.App.--Fort Worth 2010, no pet.) (holding in aggravated assault case a separate express deadly weapon finding was not required because a guilty finding as charged by indictment required jury believe beyond a reasonable doubt defendant used or exhibited deadly weapon or knew deadly weapon would be used or exhibited in assault); *Roberson v. State,* No. 14-08-00238-CR, 2009 Tex. App. Lexis 9684, at *10-11 (Tex.App.--Houston [14th Dist.] 2009, pet. refused) (mem. op., not designated for publication) (following *Sarmiento*).  While a special issue supporting a

16

deadly weapon finding was not submitted, the jury, by its verdict, implicitly made the factual determination authorizing the deadly weapon finding in the judgment. *Sarmiento,* 93 S.W.3d 570; *Hurd,* 322 S.W.3d at 793. Alternatively, the application paragraph's description and dependence on the use and exhibition of a deadly weapon combined with the jury's verdict of guilty constitute the affirmative finding. *LaFleur v. State,* 106 S.W.3d 91, 98 (Tex.Crim.App. 2003) (concerning conviction for lesser-included offense).

Appellant's sixth issue is overruled.

## Conclusion

Having overruled each of appellant's issues necessary for the final disposition of this appeal, we affirm the judgments of the trial court.[5]


James T. Campbell
Justice



Do not publish.

---

[5] At the conclusion of the State's brief, in a paragraph consisting of three sentences and containing no legal argument supported by authority, it asks us to reform the judgment convicting appellant of the aggravated robbery of Bishop by deleting the word "firearm" from the deadly weapon finding. We decline the State's request. *See Johnson v. State,* 223 S.W.3d 420, 428 (Tex.App.--Fort Worth 2007, pet. refused).