Billy Wayne **WILSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–07–00171–CR.

Court of Appeals of Texas,
Waco.

July 9, 2008.

Stan Schwieger, Waco, for appellant.

John W. Segrest, McLennan County Crim. Dist. Atty., Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Billy Wayne Wilson of robbery, and, after he pleaded true to an enhancement allegation, assessed his punishment at thirty years' imprisonment and a $5,000 fine. Wilson contends in three issues that the court erred by: (1) failing to suppress an in-field showup; (2) instructing the jurors in the punishment charge that they could not consider sympathy in their deliberations; and (3) allowing the State to add an enhancement allegation by a separate notice rather than in the indictment. We will affirm.

### Background

Wilson was charged with robbing the complainant Miranda Jones by placing her in fear of imminent bodily injury while in the course of committing theft. *See* Tex. Pen.Code Ann. § 29.02(a)(2) (Vernon 2003). According to the evidence, Wilson and Bobby Degrate approached Jones after she parked in her dormitory parking lot and ordered her into the backseat of her car. As Wilson drove, Degrate took Jones's cash and other valuables. They drove around the Waco area for about twenty minutes before allowing her to leave the car. Jones went to a nearby house, and the owner called 9-1-1. The police located Jones's car a short time later and found Wilson and Degrate in it.

### In–Field Showup

Wilson contends in his first issue that the court erred by failing to suppress an

in-field showup [1] in which Jones identified Wilson as one of the men who committed the offense.

■ We make two inquiries in determining whether a pre-trial identification should be excluded: (1) whether the police used an impermissibly suggestive pre-trial identification procedure, and (2) if so, whether, under the totality of the circumstances, there was a very substantial likelihood of irreparable misidentification. *See Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim.App.1993); *Williams v. State*, 243 S.W.3d 787, 789 (Tex.App.-Amarillo 2007, pet. ref'd); *Pace v. State*, 986 S.W.2d 740, 744 (Tex.App.-El Paso 1999, pet. ref'd). If the identification procedure is impermissibly suggestive, we weigh the following factors "against the corrupting effect of [the] suggestive identification procedure in assessing reliability under the totality of the circumstances": (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Webb v. State*, 760 S.W.2d 263, 269 (Tex.Crim.App.1988) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (citing *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972))); *accord Loserth v. State*, 963 S.W.2d 770, 772 (Tex.Crim.App.1998); *Williams*, 243 S.W.3d at 790; *Pace*, 986 S.W.2d at 744–45. We may also consider other relevant factors in evaluating the reliability of the witness's identification. *Delk*, 855 S.W.2d at 706; *Pace*, 986 S.W.2d at 745.

■ We consider these factors, all issues of historical fact, deferentially in a light favorable to the trial court's ruling. *Loserth*, 963 S.W.2d at 773; *Williams*, 243 S.W.3d at 789; *Gilstrap v. State*, 65 S.W.3d 322, 327 (Tex.App.-Waco 2001, pet. ref'd). The factors, viewed in this light, are then weighed *de novo* against "the corrupting effect" of the suggestive pre-trial identification procedure. *Loserth*, 963 S.W.2d at 773–74; *accord Williams*, 243 S.W.3d at 789; *Gilstrap*, 65 S.W.3d at 326–27.

■ An in-field showup is generally considered to be impermissibly suggestive. *See Stewart v. State*, 198 S.W.3d 60, 63 (Tex.App.-Fort Worth 2006, no pet.); *Pace*, 986 S.W.2d at 744; *see also Delk*, 855 S.W.2d at 706 (presenting single photograph to complainant "was impermissably [sic] suggestive"); *Johnigan v. State*, 69 S.W.3d 749, 752 (Tex.App.-Tyler 2002, pet. ref'd) ("a single photograph 'line up' is improperly suggestive"). *But see Williams*, 243 S.W.3d at 790 ("it is only 'possible' that the [showup] procedure was impermissibly suggestive"). We assume without deciding that the showup in Wilson's case was impermissibly suggestive and focus on the issue of whether, under the totality of the circumstances, there was a very substantial likelihood of irreparable misidentification. *See Delk*, 855 S.W.2d at 706; *Williams*, 243 S.W.3d at 789; *Pace*, 986 S.W.2d at 744.

The first factor is the opportunity of the witness to view the criminal at the time of the crime. Jones testified that she noticed two black males as she was entering her dormitory parking lot around 10:00 p.m. The parking lot was well-lit. She parked under a street light. The same two males

---

1. A "showup" has been defined as a "pretrial identification procedure in which a suspect is confronted with a witness to or the victim of a crime. Unlike a lineup, a showup is a one-on-one confrontation." BLACK'S LAW DICTIONARY 1413 (8th ed.2004).

approached her, and one of them told her to get into backseat of her car. She testified that she got "a good look" at Wilson both before she parked her car and when he approached. However, she was ordered to keep her head down after they got into her car, and she was unable to see the driver during the twenty minutes they rode around in her car.

The second factor is the witness's degree of attention. Although no one specifically asked Jones about her "degree of attention," the trial court could reasonably infer that she was attentive to the surrounding circumstances because she testified about noticing Wilson and Degrate as she entered the parking lot, she testified about how well-lit the parking lot was, and she testified that she got "a good look" at Wilson.

The third factor is the accuracy of the witness's prior description of the criminal. Here, very little testimony was elicited in the pretrial hearing regarding the accuracy or detail of Jones's description of Wilson or Degrate. Wilson did cross-examine an officer about Jones's purported statement to the 9–1–1 operator that Wilson was wearing a "hoodie." The officer testified that he was unaware that she had provided this information.[2]

The fourth factor is the level of certainty demonstrated by the witness at the confrontation. The record is unclear on this issue. Jones apparently had no hesitance in identifying Wilson as the driver, but the officer did not specifically document "the level of certainty demonstrated." She testified at the pretrial suppression hearing and at trial that she was "100 percent sure" that Wilson and Degrate were the robbers. The trial court could have reasonably inferred from this testimony that

Jones identified Wilson on the night in question with a high level of certainty.

The last of the listed factors is the length of time between the crime and the confrontation. Wilson concedes that this factor is favorable to the State.

Finally, we note two other relevant factors which serve to enhance the reliability of Jones's out of court identification. Wilson was arrested in Jones's car a short time after it was reported stolen and Jones's keys were found in the police car that Wilson was placed in after his arrest.

Wilson refers to other factors which, he believes, call into question the reliability of the identification: (1) the officer "had little formal training" on conducting "a single person showup"; (2) the officer failed to videotape the showup though he had equipment available to do so; and (3) the officer failed to tell Jones that the persons she was about to view may or may not be the perpetrators (as recommended in a training manual published by the Department of Justice). The trial court would have been within its discretion to consider these other factors as bearing on the reliability of Jones's identification of Wilson. *See Delk*, 855 S.W.2d at 706; *Pace*, 986 S.W.2d at 745. However, the court would likewise have been within its discretion to conclude under the totality of the circumstances that these factors did not lead to a "very substantial likelihood of irreparable misidentification." *See Delk*, 855 S.W.2d at 706; *Williams*, 243 S.W.3d at 789; *Pace*, 986 S.W.2d at 744.

Viewed deferentially in a light favorable to the trial court's decision, the first, second, fourth and fifth listed factors (and the two additional factors we noted) support the court's determination that, under the

---

**2.** A recording of the 9–1–1 call was not offered in evidence during the pretrial hearing. It was admitted at trial. The recording indicates that Jones told the 9–1–1 operator, via the homeowner who called 9–1–1 for her, that Wilson was wearing a sweatshirt with a hood.

totality of the circumstances, there was no substantial likelihood of irreparable misidentification. *See Delk,* 855 S.W.2d at 707–08; *Williams,* 243 S.W.3d at 791; *Stewart,* 198 S.W.3d at 63; *Pace,* 986 S.W.2d at 745. Accordingly, we overrule Wilson's first issue.

## Jury Instruction

■ Wilson contends in his second issue that the court erred by instructing the jurors in the punishment charge that they should not consider sympathy in their deliberations because this prevented the jurors from giving effect to his mitigating evidence. He cites decisions of the United States Supreme Court and from other states to support this contention.

Wilson refers to familiar death penalty jurisprudence that punishment charges in such cases must allow jurors "to give meaningful effect or a 'reasoned moral response' to a defendant's mitigating evidence." *See, e.g., Abdul–Kabir v. Quarterman,* 550 U.S. 233, 127 S.Ct. 1654, 1675, 167 L.Ed.2d 585 (2007). This requirement has been embraced by a majority of the justices of the Supreme Court since at least 1989 when it was addressed in the Court's decision in *Penry v. Lynaugh,* 492 U.S. 302, 328, 109 S.Ct. 2934, 2951, 106 L.Ed.2d 256 (1989) (quoting *Franklin v. Lynaugh,* 487 U.S. 164, 184, 108 S.Ct. 2320, 2333, 101 L.Ed.2d 155 (1988) (O'Connor, J., concurring) (quoting *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring))).

However, Wilson's contention was answered by the Supreme Court the year after it decided *Penry.* In *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), the Court considered the propriety of an "antisympathy instruction" similar to the one employed in Wilson's case.[3] In *Saffle,* the trial court instructed the jurors in its punishment charge, "You must avoid any influence of sympathy, sentiment, passion, prejudice, or other arbitrary factor when imposing sentence." *Id.* at 487, 110 S.Ct. at 1259. In a federal habeas challenge, Parks argued that this "antisympathy instruction" violated the Eighth Amendment. *Id.* at 486, 110 S.Ct. at 1259. The Court rejected Parks's claim both on its merits and under federal habeas principles. *Id.*

In rejecting Parks's claim on its merits, the Court stated, "Parks argues that the Eighth Amendment, as interpreted in 1983, required, and still requires, that jurors be allowed to base the sentencing decision upon the sympathy they feel for the defendant after hearing his mitigating evidence. We disagree...." *Id.* at 489, 110 S.Ct. at 1260–61. The Court further stated, "We thus cannot say that the large majority of federal and state courts that have rejected challenges to antisympathy instructions similar to that given at Parks' trial have been unreasonable in concluding that the instructions do not violate the rule of *Lockett* and *Eddings.*"[4] *Id.* at 490, 110 S.Ct. at 1261; *see also Johnson v. Texas,* 509 U.S. 350, 371–72, 113 S.Ct. 2658, 2671, 125 L.Ed.2d 290 (1993) ("[W]e have not construed the *Lockett* line of cases to mean that a jury must be able to dispense mercy on the basis of a sympathetic response to the defendant. Indeed, we have said that '[i]t would be very difficult to reconcile a

---

**3.** In Wilson's case, the court instructed the jurors, "Do not let personal bias, prejudice, sympathy or resentment on your part, or any such personal emotion on your part, enter into your deliberations or affect your verdict in this case."

**4.** *See Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

rule allowing the fate of a defendant to turn on the vagaries of particular jurors' emotional sensitivities with our longstanding recognition that, above all, capital sentencing must be reliable, accurate, and nonarbitrary.'") (quoting *Saffle*, 494 U.S. at 493, 110 S.Ct. at 1263).

The Supreme Court has expressly rejected the argument advanced by Wilson. While other states may have adopted the position he advances, we decline to do so. Accordingly, we overrule Wilson's second issue.

### Enhancement Allegation

■ Wilson contends in his third issue that the court erred by allowing the State to add an enhancement allegation by a separate notice rather than in the indictment. He concedes that the notice given by the State is permissible under current Texas precedent, but he argues that this line of cases has been overruled *sub silentio* by *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and its progeny.[5] We disagree.

One year before *Jones*, the Supreme Court unequivocally held that a recidivist allegation which enhances punishment because of a prior conviction is not an element of an offense and need not be pleaded in an indictment. *See Almendarez–*

*Torres v. United States*, 523 U.S. 224, 226–27, 118 S.Ct. 1219, 1222, 140 L.Ed.2d 350 (1998).

In *Jones*, the Supreme Court held that the three subdivisions of the federal carjacking statute, which establish a base punishment range of up to fifteen years' imprisonment and consecutively higher penalties if a person suffers serious bodily injury or death as a result of the offense, define three distinct offenses.[6] *See Jones*, 526 U.S. at 229, 119 S.Ct. at 1217. The Court concluded that the latter two subdivisions, which involve serious bodily injury or death, are elements of distinct offenses, rather than sentencing considerations, and thus must be alleged in the indictment and proved beyond a reasonable doubt. *Id.* at 251–52, 119 S.Ct. at 1228.

In *Apprendi v. New Jersey*, the Court cited a footnote from *Jones* and stated, *"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000) (emphasis added) (citing *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. at 1224 n. 6). Disregarding the italicized exception quoted above, Wilson contends

---

**5.** Wilson's brief assigns preeminence to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which is perhaps the Court's most-cited decision in this area. Nevertheless, *Jones* came first, and served as a foundation for the Court's decision in *Apprendi*.

**6.** The federal carjacking statute, 18 U.S.C. § 2119, provides:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by

force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title, including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C.S. § 2119 (LexisNexis Supp.2007).

that the enhancement allegation is an element of the offense which should have been alleged in the indictment because the allegation increased the penalty for his crime beyond the prescribed statutory maximum.

Wilson seizes on a quote from the Supreme Court's later decision in *Ring v. Arizona* to support his argument. 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). The quoted excerpt on which he relies is as follows, "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact-no matter how the State labels it-must be found by a jury beyond a reasonable doubt." *Id.* at 602, 122 S.Ct. at 2439. However, Wilson ignores a previous statement by the Court, "[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (*other than prior conviction*) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 600, 122 S.Ct. at 2439 (emphasis added) (quoting *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. at 1224 n. 6).

Although Wilson cites several statements in which various justices of the Supreme Court have questioned whether *Almendarez–Torres* should be revisited, that Court has not retreated from the principle that the fact of a prior conviction is not an element of an offense and need not be pleaded in an indictment. *See Almendarez–Torres*, 523 U.S. at 226–27, 118 S.Ct. at 1222; *see also Ring*, 536 U.S. at 600, 122 S.Ct. at 2439; *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–63; *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. at 1224 n. 6.

The Fourteenth Court has rejected an identical complaint as Wilson's in an unpublished opinion. *See Heathcock v. State*, No. 14–02–00899–CR, 2003 WL 21710468, at *2 (Tex.App.-Houston [14th Dist.] July 24, 2003, pet. ref'd); *see also Rayford v. State*, 125 S.W.3d 521, 533 (Tex.Crim.App. 2003) (*Apprendi* does not require the State to allege the death penalty special issues in the indictment).

■ Under Texas law, the State must give notice of enhancement allegations, but such notice need not be contained in the indictment. *See Brooks v. State*, 957 S.W.2d 30, 33–34 (Tex.Crim.App.1997); *Mayfield v. State*, 219 S.W.3d 538, 539–40 (Tex.App.-Texarkana 2007, no pet.); *Williams v. State*, 172 S.W.3d 730, 734 (Tex.App.-Fort Worth 2005, pet. ref'd).

Here, the State gave written notice of its intent to seek an enhanced punishment because of Wilson's prior felony conviction. This notice satisfied the requirements of *Brooks*, and the Sixth Amendment[7] right to jury trial does not require anything different. *See Heathcock*, 2003 WL 21710468, at *2; *see also Rayford*, 125 S.W.3d at 533. Accordingly, we overrule Wilson's third issue.

We affirm the judgment.

Chief Justice GRAY concurs in the judgment which affirms Wilson's conviction. A separate opinion will not issue.

---

**7.** Wilson correctly characterizes his complaint as constitutional in nature. *Jones* and its progeny are grounded in the Sixth Amendment right to trial by jury. *See Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 863–64, 166 L.Ed.2d 856 (2007).