

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00370-CR

**TERRELL HENRY,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2007-1942-C1**

## MEMORANDUM OPINION

A jury convicted Terrell Henry of aggravated robbery of a convenience store and sentenced him to life in prison. In two issues, Henry contends that he received ineffective assistance of counsel because counsel failed to file a motion to suppress certain evidence. We affirm.

### STANDARD OF REVIEW

To prove ineffective assistance, an appellant must show that counsel's performance was deficient and the defense was prejudiced by counsel's deficient

performance. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *see also Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003). To satisfy *Strickland* with regard to counsel's failure to file a motion to suppress, "an appellant must show by a preponderance of the evidence that the result of the proceeding would have been different--i.e., that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction." *Hollis v. State*, 219 S.W.3d 446, 456 (Tex. App.—Austin 2007 no pet.) (citing *Jackson v. State*, 973 S.W.2d 954, 956-57 (Tex. Crim. App. 1998)).

## ANALYSIS

In issue one, Henry contends that his initial encounter with law enforcement was an arrest rather than an investigative detention and that trial counsel should have sought suppression of evidence seized as a result. In issue two, Henry contends that trial counsel should have sought suppression of an improperly suggestive in-field show-up.

### Arrest or Detention

An encounter is deemed an investigative detention when a police officer detains a person reasonably suspected of criminal activity to determine his identity or to momentarily maintain the status quo to garner more information. *See Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987). The detaining officer must have specific articulable facts which, taken together with rational inferences from those facts, lead him to conclude the person detained is, has been, or soon will be engaged in criminal activity. *See Haas v. State*, 172 S.W.3d 42, 51 n.3 (Tex. App.—Waco 2005, pet. ref'd). The

officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime. *Id.* at 51. A reasonable-suspicion determination is made by considering the totality of the circumstances. *Ford v. State,* 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005).

"[O]fficers may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety." *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997). If the force utilized exceeds the goal of the stop, such force may transform an investigative detention into an arrest. *See State v. Moore,* 25 S.W.3d 383, 385-86 (Tex. App.—Austin 2000, no pet.). An arrest occurs when a person's "liberty of movement is restricted or restrained" by an "officer or person executing a warrant of arrest" or without a warrant. TEX. CODE CRIM. PROC. ANN. art. 15.22 (Vernon 2005); *Medford v. State,* 13 S.W.3d 769, 772-73 (Tex. Crim. App. 2000).

Lieutenant Robert Young, traveling in an unmarked patrol car, responded to the robbery by a "black male, medium height and build, very short haircut, wearing a black t-shirt and gray sweatpants." Young knew that the suspect had exhibited a butcher knife during the robbery. A few blocks from the store, Young spotted Henry, who matched the race and physique of the suspect, but who wore a black t-shirt, jacket, and jeans, not gray sweatpants. Henry watched a marked patrol car and then turned down an alley. Young followed Henry, ordered him at gunpoint to lie on the ground, and placed him in handcuffs. A pat-down revealed coins and bills in Henry's pockets.

Young found a butcher knife lying underneath Henry.  Young searched the area and found a discarded pair of sweatpants and a blue cap.

The record indicates that Young had specific articulable facts available to him, which, taken together with rational inferences from those facts, could lead him to conclude that Henry had been engaged in criminal activity.  *See Haas*, 172 S.W.3d at 51 n.3.  The totality of the circumstances indicates that Henry matched a partial description of the suspect, was seen walking in an area near the time and place of the crime, and appeared to be avoiding police.  Henry attacks each of these articulable facts.

First, Henry challenges Young's description of the suspect.  Detective Steve January testified that a computer printout described the suspect as "black male, black short-sleeve shirt, and gray sweatpants."  Officer Thomas Beaudin, Jr. testified that this was the only information available.  Young admitted that Henry was dressed differently.  Thus, Henry argues that Young's testimony regarding additional facts is merely an "attempt to 'cure' a seizure lacking a legal basis."[1]

That the printout contained a lesser description does not mean that Young's description was inaccurate or non-existent.  Upon spotting Henry, Young noted that Henry matched a partial description of the suspect and could reasonably conclude that he may have discarded or changed clothing.  *See Louis v. State*, 825 S.W.2d 752, 754-55 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd); *see also Hill v. State*, No. B14-91-

---

[1]    Henry maintains that whether the robber's hair was "short" would have been concealed by his baseball cap and whether Henry's black shirt was short-sleeve was concealed by a jacket.  We are not persuaded by these arguments.  Part of the robber's hair would still be visible even with a baseball cap.  Moreover, Young could conclude that Henry may have put on a jacket after the robbery, just as he could have concluded that Henry discarded clothing, to conceal his identity.

01274-CR, 1992 Tex. App. LEXIS 2667, at *1, 7-8 (Tex. App.—Houston [14th Dist.] Oct. 8, 1992, pet. ref'd) (not designated for publication).

Second, Henry maintains that he was four blocks away from the crime scene and was actually walking towards the crime scene. When evaluating reasonable suspicion, "time of night and location are viewed together and common sense is applied to the totality of these circumstances." *Tanner v. State*, 228 S.W.3d 852, 858 (Tex. App.—Austin 2007, no pet.). Henry was both temporally and geographically close to the crime scene. *See Louis*, 825 S.W.2d at 754-55 (suspect was seen less than two miles from crime scene).

Third, Henry contends that avoiding police is not unlawful. *See Gurrola v. State*, 877 S.W.2d 300, 302-03 (Tex. Crim. App. 1994). While this is correct, "[n]ervous, evasive behavior is a *pertinent factor* in determining reasonable suspicion." *Haas*, 172 S.W.3d at 54 n.7 (emphasis added) (quoting *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000)).

Viewing the totality of the circumstances, the specific articulable facts available to Young could create a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect Henry with the unusual activity, and some indication the unusual activity is related to crime. *See Haas*, 172 S.W.3d at 51.

Henry next contends that the detention was transformed into an arrest by Young's use of force and failure to question him. Young is a Baylor University police officer who knew that the suspect had exhibited a weapon during the robbery. He was alone when he encountered the possible suspect around 2:00 a.m. He handcuffed Henry and asked whether Henry possessed any weapons. Waco police officers arrived

shortly thereafter and the knife was discovered. It appears that the investigation began at this point, with officers asking Henry whether the knife belonged to him and taking Henry to the convenience store a short distance away for identification. We cannot say that it was unreasonable for Young to secure Henry for officer safety. Nor can we say that the detention was transformed into an arrest because Young failed to question Henry. *See Morris v. State*, 50 S.W.3d 89, 98 (Tex. App.—Fort Worth 2001, no pet.) (detention was not transformed into an arrest when officer handcuffed Morris and placed her on the ground at gunpoint for safety reasons and failed to "verbally question Morris"); *see also Trujillo v. State*, No. 01-05-00455-CR, 2007 Tex. App. LEXIS 753, at *13-16 (Tex. App.—Houston [1st Dist.] Feb. 1, 2007, pet. ref'd) (not designated for publication) (temporary detention was justified where murder suspect was seized and placed in handcuffs for officer safety and officers awaited the arrival of homicide detectives to conduct an investigation); *Davis v. State*, 783 S.W.2d 313, 317-18 (Tex. App.—Corpus Christi 1990, pet. ref'd) (officer conducting an investigative detention did not act unreasonably by transporting defendant "approximately two and one half miles back to the scene for the purpose of determining whether he could be identified as the Nash burglar.").

We, therefore, conclude that Henry was the subject of an investigative detention, not an arrest.[2] For this reason, Young was authorized to conduct a limited search of Henry's outer clothing for weapons where he reasonably believed that Henry was

---

[2] Henry cites numerous cases to support his position to the contrary. We have reviewed each of these cases and find them to be distinguishable from the present case in one or more respects.

armed and dangerous. *See Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000). Henry does not dispute that Young could reasonably assume that he was armed, but argues that Young's pat-down for weapons exceeded the scope of the detention when he removed the bills and coins from his pockets.

"[T]he purpose of a limited search after [an] investigatory stop is not to discover evidence of a crime, but to allow the peace officer to pursue investigation without fear of violence." *Carmouche*, 10 S.W.3d at 329. "[I]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Id*. at 330. "[I]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Id.*

Young testified that he patted down Henry's back pockets and found his I.D. He then patted down the front pockets where he found the bills and coins. He offered no testimony as to whether the identity of the objects in Henry's pockets was immediately apparent to him as he conducted the pat-down. Because the record contains no evidence that contraband was immediately apparent to Young, we conclude that the search of Henry's pockets did not satisfy the "plain feel" doctrine and exceeded the scope of the detention. *See Sturchio v. State*, 136 S.W.3d 21, 25 (Tex. App.—San Antonio 2002, no pet.); *see also Kellog v. State*, No. 04-98-00884-CR, 1999 Tex. App. Lexis 2531, at *6-7 (Tex. App.—San Antonio Apr. 7, 1999, no pet.) (not designated for publication).

The knife, however, is not the result of an illegal search. Rather, when Henry was lifted off the ground to be transported to the convenience store for identification, the knife was in plain view. It was properly seized. *See Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000) ("[T]he 'plain view' doctrine requires only that: (1) law enforcement officials have a right to be where they are, and (2) it be immediately apparent that the item seized constitutes evidence, that is, there is probable cause to associate the item with criminal activity."); *see also McCall v. State*, 540 S.W.2d 717, 720 (Tex. Crim. App. 1976) ("It is simply not a search to observe that which is open to view.").

### In-Field Show-Up

An in-field show-up is generally considered to be impermissibly suggestive. *Wilson v. State*, 267 S.W.3d 215, 217 (Tex. App.—Waco 2008, pet. ref'd); *see also Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993), *overruled on other grounds by Ex parte Moreno*, 245 S.W.3d 419, 425 (Tex. Crim. App. 2008). We assume without deciding that the show-up in Henry's case was impermissibly suggestive and focus on whether, under the totality of the circumstances, there was a very substantial likelihood of irreparable misidentification. *See Wilson*, 267 S.W.3d at 217. In doing so, we weigh the following factors "against the corrupting effect[] of [the] suggestive identification procedure in assessing reliability under the totality of the circumstances:" (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the

length of time between the crime and the confrontation. *Id*. (citing *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988)).

Rodrick Puryear, the convenience store employee, testified that the robber exhibited a butcher knife, ordered him not to say or touch anything, and took money from the cash register. The store was well lit. He was scared and watched the robber during the entire robbery. When the robber left the store, Puryear called police, but the record does not contain written documentation as to the details he provided to dispatch. Nor did Puryear testify to the description he gave police.

As previously discussed, January and Beaudin testified that the suspect was a black male wearing a black short-sleeve shirt and gray sweatpants. Young further described the suspect as medium height and build with a short haircut. Puryear testified that the robber wore baggy pants and a hoodie. He did not recall the cap. The surveillance photographs support the physical description of the suspect and show the suspect wearing a black t-shirt, a cap, gray baggy pants, and black shoes. Young found the discarded cap and sweatpants.

Puryear, Beaudin, and January testified that Henry could not be identified from the surveillance photographs. Shortly after the crime occurred, police arrived at the store with Henry. Puryear attempted to identify him through the surveillance system. Beaudin testified that Puryear hesitantly identified Henry as the robber, but wanted to be sure. Police then had Puryear identify Henry in person outside the store. Puryear testified that he did not want to do this. He noticed that Henry had changed pants, was no longer wearing a cap, and had put on a jacket. He testified that Henry began

"running his mouth" about wearing different clothing than Puryear had described. Puryear believed that Henry heard the description over the police scanner. Beaudin testified that Puryear first shook his head "yes" and when asked if Henry was the robber, Puryear replied, "Yes." Puryear testified that, both at the time of the identification and at trial, he was sure Henry was the robber.

Under the totality of the circumstances, we cannot say that there was a very substantial likelihood of irreparable misidentification. *See Wilson*, 267 S.W.3d at 217; *see also Delk,* 855 S.W.2d at 706.

### Sufficiency of the Remaining Evidence

Even were the coins and bills suppressed, the record contains the surveillance photographs, photographs of the discarded cap and sweatpants, Puryear's testimony regarding the robbery, Puryear's identification of Henry as the robber, and the butcher knife found at the time of Henry's detention. The jury could reasonably conclude that Henry was the same person who robbed the convenience store at knifepoint. *See Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (victim's testimony alone was sufficient to support conviction for aggravated robbery; "A rational jury could have found appellant guilty of aggravated robbery without DNA evidence, fingerprint evidence, or evidence of the gun or cash Newby gave to appellant."). We cannot say that the result of Henry's trial would have been different, such that the remaining evidence would have been insufficient to support his conviction. *See Hollis*, 219 S.W.3d at 456.

Because Henry cannot establish the requirements of *Strickland* with regard to trial counsel's failure to file a motion to suppress, we overrule his first and second issues. The judgment is affirmed.

FELIPE REYNA
Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed August 19, 2009
Do not publish
[CRPM]