IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00370-CR

 

Terrell Henry,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 19th District
Court

McLennan County, Texas

Trial Court No. 2007-1942-C1

 



MEMORANDUM  Opinion



 








            A jury convicted Terrell
Henry of aggravated robbery of a convenience store and sentenced him to life in
prison.  In two issues, Henry contends that he received ineffective assistance
of counsel because counsel failed to file a motion to suppress certain evidence. 
We affirm.

Standard of
Review

To prove ineffective assistance, an appellant must show that
counsel’s performance was deficient and the defense was prejudiced by counsel’s
deficient performance.  See Strickland
v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see
also Wiggins
v. Smith, 539
U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d 471 (2003).  To
satisfy Strickland with regard to counsel’s failure to file a motion to suppress,
“an appellant must show by a preponderance of the evidence that the result of
the proceeding would have been different--i.e., that the motion to suppress would have been granted and that the
remaining evidence would have been insufficient to support his conviction.”  Hollis v. State, 219 S.W.3d 446, 456 (Tex. App.—Austin
2007 no pet.) (citing Jackson v. State, 973 S.W.2d 954, 956-57 (Tex.
Crim. App. 1998)).

ANALYSIS

In
issue one, Henry contends that his initial encounter with law enforcement was
an arrest rather than an investigative detention and that trial counsel should
have sought suppression of evidence seized as a result.  In issue two, Henry
contends that trial counsel should have sought suppression of an improperly
suggestive in-field show-up.

Arrest
or Detention

An encounter is deemed an investigative
detention when a police officer detains a person reasonably suspected of
criminal activity to determine his identity or to momentarily maintain the
status quo to garner more information.  See Hoag v. State, 728 S.W.2d 375, 380 (Tex. Crim.
App. 1987).  The detaining officer must have specific articulable
facts which, taken together with rational inferences from those facts, lead him
to conclude the person detained is, has been, or soon will be engaged in
criminal activity.  See Haas v. State, 172 S.W.3d 42, 51 n.3 (Tex.
App.—Waco 2005, pet. ref’d).  The officer must have a reasonable
suspicion that some activity out of the ordinary is occurring or has occurred,
some suggestion to connect the detainee with the unusual activity, and some
indication that the unusual activity is related to crime.  Id. at 51.  A
reasonable-suspicion determination is made by considering the totality of the
circumstances.  Ford v. State, 158 S.W.3d 488, 492-93 (Tex.
Crim. App. 2005).

“[O]fficers may use such force as is
reasonably necessary to effect the goal of the stop: investigation, maintenance
of the status quo, or officer safety.”  Rhodes
v. State, 945 S.W.2d 115,
117 (Tex. Crim. App. 1997).  If
the force utilized exceeds the goal
of the stop, such force may transform an investigative detention
into an arrest.
 See State v. Moore, 25 S.W.3d 383, 385-86 (Tex.
App.—Austin 2000, no pet.).  An arrest occurs when a person’s “liberty
of movement is restricted or restrained” by an “officer or person executing a
warrant of arrest” or without a warrant.  Tex.
Code Crim. Proc. Ann.
art. 15.22 (Vernon 2005); Medford v. State, 13 S.W.3d 769, 772-73 (Tex.
Crim. App. 2000).

            Lieutenant Robert Young,
traveling in an unmarked patrol car, responded to the robbery by a “black male,
medium height and build, very short haircut, wearing a black t-shirt and gray
sweatpants.”  Young knew that the suspect had exhibited a butcher knife during
the robbery.  A few blocks from the store, Young spotted Henry, who matched the
race and physique of the suspect, but who wore a black t-shirt, jacket, and
jeans, not gray sweatpants.  Henry watched a marked patrol car and then turned
down an alley.  Young followed Henry, ordered him at gunpoint to lie on the
ground, and placed him in handcuffs.  A pat-down revealed coins and bills in
Henry’s pockets.  Young found a butcher knife lying underneath Henry.  Young
searched the area and found a discarded pair of sweatpants and a blue cap.

The record indicates that Young had specific
articulable facts available to him, which, taken together with rational
inferences from those facts, could lead him to conclude that Henry had been
engaged in criminal activity.  See Haas, 172 S.W.3d at 51 n.3. 
The totality of the circumstances indicates that Henry matched a partial
description of the suspect, was seen walking in an area near the time and place
of the crime, and appeared to be avoiding police.  Henry attacks each of these
articulable facts.

First, Henry challenges Young’s
description of the suspect.  Detective Steve January testified that a computer
printout described the suspect as “black male, black short-sleeve shirt, and
gray sweatpants.”  Officer Thomas Beaudin, Jr. testified that this was the only
information available.  Young admitted that Henry was dressed differently.  Thus,
Henry argues that Young’s testimony regarding additional facts is merely an
“attempt to ‘cure’ a seizure lacking a legal basis.”[1]

That the printout contained a lesser
description does not mean that Young’s description was inaccurate or
non-existent.  Upon spotting Henry, Young noted that Henry matched a partial
description of the suspect and could reasonably conclude that he may have
discarded or changed clothing.  See Louis v. State,
825 S.W.2d 752, 754-55 (Tex. App.—Houston [14th Dist.] 1992, pet. ref’d); see also Hill v. State, No. B14-91-01274-CR, 1992
 Tex. App. LEXIS 2667, at *1, 7-8
(Tex. App.—Houston [14th Dist.] Oct. 8, 1992, pet. ref’d) (not designated for
publication).

Second,
Henry maintains that he was four blocks away from the crime scene and was
actually walking towards the crime scene.  When evaluating reasonable
suspicion, “time of night and location are viewed together and common
sense is applied to the totality of these circumstances.”  Tanner
v. State, 228 S.W.3d 852, 858 (Tex. App.—Austin 2007, no pet.).  Henry
was both temporally and geographically close to the crime scene.  See Louis, 825
S.W.2d at 754-55 (suspect was seen less than two miles from
crime scene).      

Third,
Henry contends that avoiding police is not unlawful.  See Gurrola
v. State, 877 S.W.2d 300, 302-03 (Tex. Crim. App. 1994).  While
this is correct, “[n]ervous, evasive behavior is a pertinent
factor in determining reasonable suspicion.”  Haas, 172 S.W.3d at 54
n.7 (emphasis added) (quoting Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct.
673, 676, 145 L. Ed. 2d 570 (2000)).

Viewing
the totality of the circumstances, the specific articulable facts available to Young
could create a reasonable suspicion that some activity out of the ordinary is
occurring or has occurred, some suggestion to connect Henry with the unusual
activity, and some indication the unusual activity is related to crime.  See
Haas, 172 S.W.3d at 51. 

Henry
next contends that the detention was transformed into an arrest by Young’s use
of force and failure to question him.  Young is a Baylor University police
officer who knew that the suspect had exhibited a weapon during the robbery. 
He was alone when he encountered the possible suspect around 2:00 a.m.  He
handcuffed Henry and asked whether Henry possessed any weapons.  Waco police officers arrived shortly thereafter and the knife was discovered.  It appears
that the investigation began at this point, with officers asking Henry whether
the knife belonged to him and taking Henry to the convenience store a short
distance away for identification.  We cannot say that it was unreasonable for
Young to secure Henry for officer safety.  Nor can we say that the detention
was transformed into an arrest because Young failed to question Henry.  See Morris
v. State, 50 S.W.3d 89, 98 (Tex. App.—Fort Worth 2001,
no pet.) (detention was not transformed into an arrest when officer handcuffed Morris
and placed her on the ground at gunpoint for safety reasons and failed to
“verbally question Morris”); see also Trujillo v. State, No.
01-05-00455-CR, 2007 Tex. App. LEXIS 753, at *13-16 (Tex.
App.—Houston [1st Dist.] Feb. 1, 2007, pet. ref’d) (not designated for
publication) (temporary detention was justified where murder suspect was seized
and placed in handcuffs for officer safety and officers awaited the arrival of
homicide detectives to conduct an investigation); Davis
v. State, 783 S.W.2d 313, 317-18 (Tex. App.—Corpus Christi 1990,
pet. ref’d) (officer conducting an investigative detention did not act
unreasonably by transporting defendant “approximately two and
one half miles back to the scene for the purpose of determining whether he
could be identified as the Nash burglar.”).

We, therefore, conclude that Henry was
the subject of an investigative detention, not an arrest.[2] 
For this reason, Young was authorized to conduct a limited search of Henry’s
outer clothing for weapons where he reasonably believed that Henry was armed
and dangerous.  See Carmouche
v. State, 10 S.W.3d
323, 329 (Tex. Crim. App.
2000).  Henry does not
dispute that Young could reasonably assume that he was armed, but argues that
Young’s pat-down for weapons exceeded the scope of the detention when he
removed the bills and coins from his pockets.

“[T]he purpose of a limited search after
[an] investigatory stop is not to discover evidence of a crime, but to allow
the peace officer to pursue investigation without fear of violence.”  Carmouche, 10 S.W.3d at 329.  “[I]f the protective search goes beyond
what is necessary to determine if the suspect is armed, it is no longer valid
under Terry and its fruits will be suppressed.”  Id. at 330.  “[I]f
a police officer lawfully pats down a suspect’s outer clothing and feels an
object whose contour or mass makes its identity immediately apparent, there has
been no invasion of the suspect’s privacy beyond that already authorized by the
officer’s search for weapons.”  Id.

Young
testified that he patted down Henry’s back pockets and found his I.D.  He then
patted down the front pockets where he found the bills and coins.  He offered
no testimony as to whether the identity of the objects in Henry’s pockets was
immediately apparent to him as he conducted the pat-down.  Because the record
contains no evidence that contraband was immediately apparent to Young, we
conclude that the search of Henry’s pockets did not satisfy the “plain feel” doctrine
and exceeded the scope of the detention.  See Sturchio v. State, 136
S.W.3d 21, 25 (Tex. App.—San Antonio 2002, no pet.); see also Kellog v.
State, No. 04-98-00884-CR, 1999
Tex. App. Lexis 2531, at *6-7 (Tex. App.—San Antonio Apr. 7, 1999, no pet.)
(not designated for publication).

The knife,
however, is not the result of an illegal search.  Rather, when Henry was lifted
off the ground to be transported to the convenience store for identification,
the knife was in plain view.  It was properly seized.  See Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App.
2000) (“[T]he ‘plain view’ doctrine
requires only that: (1) law enforcement officials have a right to be where they
are, and (2) it be immediately apparent that the item seized constitutes
evidence, that is, there is probable cause to associate the item with criminal
activity.”); see also McCall v. State, 540 S.W.2d 717, 720 (Tex. Crim.
App. 1976) (“It is simply not a search to observe that which is open
to view.”).

In-Field Show-Up

An in-field show-up
is generally considered to be impermissibly suggestive. Wilson v. State, 267 S.W.3d 215, 217 (Tex.
App.—Waco 2008, pet. ref’d); see also Delk v. State, 855 S.W.2d 700, 706 (Tex. Crim.
App. 1993), overruled on other grounds by Ex parte Moreno, 245 S.W.3d 419, 425 (Tex. Crim.
App. 2008).  We assume without deciding that the show-up in Henry’s case
was impermissibly suggestive and focus on whether, under the totality of the
circumstances, there was a very substantial likelihood of irreparable
misidentification.  See Wilson, 267 S.W.3d at 217.  In doing so, we
weigh the following factors “against the corrupting effect[] of [the]
suggestive identification procedure in assessing reliability under the totality
of the circumstances:” (1) the opportunity of the witness to view the criminal
at the time of the crime; (2) the witness’s degree of attention; (3) the
accuracy of the witness’s prior description of the criminal; (4) the level of
certainty demonstrated by the witness at the confrontation, and (5) the length
of time between the crime and the confrontation.  Id. (citing Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim.
App. 1988)).

Rodrick Puryear, the convenience store
employee, testified that the robber exhibited a butcher knife, ordered him not
to say or touch anything, and took money from the cash register.  The store was
well lit.  He was scared and watched the robber during the entire robbery. 
When the robber left the store, Puryear called police, but the record does not
contain written documentation as to the details he provided to dispatch.  Nor
did Puryear testify to the description he gave police.

As previously discussed, January and Beaudin
testified that the suspect was a black male wearing a black short-sleeve shirt
and gray sweatpants.  Young further described the suspect as medium height and
build with a short haircut.  Puryear testified that the robber wore baggy pants
and a hoodie.  He did not recall the cap.  The surveillance photographs support
the physical description of the suspect and show the suspect wearing a black
t-shirt, a cap, gray baggy pants, and black shoes.  Young found the discarded
cap and sweatpants.

Puryear, Beaudin, and January testified
that Henry could not be identified from the surveillance photographs.  Shortly
after the crime occurred, police arrived at the store with Henry.  Puryear attempted
to identify him through the surveillance system.  Beaudin testified that
Puryear hesitantly identified Henry as the robber, but wanted to be sure. 
Police then had Puryear identify Henry in person outside the store.  Puryear
testified that he did not want to do this.  He noticed that Henry had changed
pants, was no longer wearing a cap, and had put on a jacket.  He testified that
Henry began “running his mouth” about wearing different clothing than Puryear
had described.  Puryear believed that Henry heard the description over the
police scanner.  Beaudin testified that Puryear first shook his head “yes” and
when asked if Henry was the robber, Puryear replied, “Yes.”  Puryear testified
that, both at the time of the identification and at trial, he was sure Henry
was the robber.

Under the totality of the circumstances,
we cannot say that there was a very substantial likelihood of irreparable
misidentification.  See Wilson, 267 S.W.3d at 217; see also
Delk, 855 S.W.2d at 706.

Sufficiency of the Remaining Evidence

Even were the coins and bills
suppressed, the record contains the surveillance photographs, photographs of
the discarded cap and sweatpants, Puryear’s testimony regarding the robbery,
Puryear’s identification of Henry as the robber, and the butcher knife found at
the time of Henry’s detention.  The jury could reasonably conclude that Henry
was the same person who robbed the convenience store at knifepoint.  See Harmon v. State, 167 S.W.3d 610, 614 (Tex. App.—Houston
[14th Dist.] 2005, pet. ref’d) (victim’s testimony alone was sufficient to
support conviction for aggravated robbery;
“A rational jury could have found appellant guilty of aggravated robbery
without DNA evidence, fingerprint evidence, or evidence of the gun or cash
Newby gave to appellant.”).
 We cannot say that the result of Henry’s
trial would have been different, such that the remaining evidence would have
been insufficient
to support his conviction.  See Hollis, 219 S.W.3d at 456.

Because Henry cannot establish the
requirements of Strickland with regard to trial counsel’s failure to
file a motion to suppress,
we overrule his first and second issues.  The judgment is affirmed.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed

Opinion
delivered and filed August 19, 2009

Do not publish

[CRPM]









[1]               Henry maintains that whether
the robber’s hair was “short” would have been concealed by his baseball cap and
whether Henry’s black shirt was short-sleeve was concealed by a jacket.  We are
not persuaded by these arguments.  Part of the robber’s hair would still be
visible even with a baseball cap.  Moreover, Young could conclude that Henry
may have put on a jacket after the robbery, just as he could have concluded
that Henry discarded clothing, to conceal his identity.





[2]               Henry cites numerous
cases to support his position to the contrary.  We have reviewed each of these
cases and find them to be distinguishable from the present case in one or more
respects.