**Opinion filed June 2, 2011**



## In The

# Eleventh Court of Appeals

_____

### No. 11-09-00226-CR

_____

### MATTHEW MARK HESLEP, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 19th District Court**

**McLennan County, Texas**

**Trial Court Cause No. 2008-1531-C1**

### M E M O R A N D U M   O P I N I O N

The jury convicted Matthew Mark Heslep of indecency with a child. The jury assessed punishment at confinement for a term of twenty years and a $10,000 fine. The trial court sentenced appellant accordingly. We affirm.

*Background*

Appellant was indicted on three counts of aggravated sexual assault of a child (Counts I through III) and one count of indecency with a child (Count IV). The indictment alleged that the offenses occurred on or about February 4, 2008. Count I alleged that appellant caused the sexual organ of L.T. to contact or be penetrated by appellant's mouth. Count II alleged that appellant penetrated L.T.'s sexual organ with his nose. Count III alleged that appellant penetrated L.T.'s

sexual organ with his finger. Count IV alleged that appellant engaged in sexual contact with L.T. by touching her genitals. On February 4, 2008, L.T. was three years old.

The State abandoned Counts I and III at trial. The jury acquitted appellant of the remaining aggravated sexual assault (Count II) and convicted him of indecency with a child (Count IV).

*Issues on Appeal*

Appellant presents two issues for review. In his first issue, he contends that the evidence is factually insufficient to support his conviction for indecency with a child. In his second issue, he contends that the trial court erred by instructing the jurors in its punishment charge that they could not consider sympathy in their deliberations.

*Sufficiency of the Evidence Standard of Review*

Appellant challenges only the factual sufficiency of the evidence to support his conviction. We note at the outset of our analysis that the Texas Court of Criminal Appeals has now held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is "no meaningful distinction between the *Jackson v. Virginia*[1] legal-sufficiency standard and the *Clewis*[2] factual-sufficiency standard"; that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"; and that "[a]ll other cases to the contrary, including *Clewis*, are overruled." *Brooks*, 323 S.W.3d at 895, 902, 912 (footnotes added). Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable. We also note that appellant did not have the benefit of the opinion in *Brooks* when this case was briefed. We will review appellant's factual sufficiency challenge under the legal sufficiency standard set forth in *Jackson v. Virginia*. Under this standard, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307; *Brooks*, 323 S.W.3d at 899.

*The Evidence at Trial*

L.T. was four years old at the time of trial. R.T. is L.T.'s father, and B.T. is L.T.'s mother. In February 2008, R.T., B.T., L.T., and L.T.'s three brothers lived in a house in

---

[1]*Jackson v. Virginia*, 443 U.S. 307 (1979).

[2]*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

2

McLennan County. Appellant, who is L.T.'s uncle, lived with them. Appellant's friend, Dustin Nemick, also lived with them.

On February 3, 2008, R.T., B.T., and their children attended a Super Bowl party at a relative's house. After the party, they went home. They arrived at their house at about 11:00 p.m. R.T. testified that, at about midnight, L.T. told him that appellant had hurt her "pee-pee." R.T. said that he pointed to L.T.'s vaginal area and that L.T. responded, "[Y]es, that's what hurt[s]." L.T. told R.T. that appellant "put his nose on it," "put a lady bug in it, in the hole," and "put his nose in the hole" and that "it hurt." The record shows that L.T. called her vaginal area her "pee-pee." L.T. told R.T. that, when appellant did these things to her, R.T. was at work and B.T. was taking L.T.'s two older brothers to school.

R.T. told B.T. about L.T.'s outcry. B.T. looked at L.T.'s vaginal area to see if it was red, but B.T. did not see anything. The next morning, B.T. called the Advocacy Center and then took L.T. to Hillcrest Baptist Medical Center. Peggi Sheppard, a Sexual Assault Nurse Examiner, examined L.T. When Sheppard asked L.T. why her parents had brought her to the hospital, L.T. responded, "Pee-pee hurts. [Appellant] hurt me." L.T. also told Sheppard that it hurt when she urinated. During the examination, Sheppard found chapping on the outer edges of L.T.'s labia majora and redness on the inner aspects of her labia minora. Sheppard did not find any evidence of acute trauma, such as tearing, scarring, or bleeding.

Dr. Ann Sims, the medical director of the Advocacy Center, reviewed photographs that Sheppard took during her examination of L.T. Dr. Sims testified that the pictures did not depict any tearing or scarring that would indicate major trauma. Dr. Sims said that she saw a little bit of redness inside and outside L.T.'s vagina. She could not determine what caused the redness. She characterized "redness" findings as generalized findings that are found "in lots of little girls." Dr. Sims said that, for example, redness can be caused by using too much soap, wearing wet or sweaty clothes, or poor hygiene. She testified that the redness depicted in the photographs of L.T. was not inconsistent with possibly hundreds of different causes, including L.T.'s allegations of sexual abuse.

Dr. Sims explained that no physical evidence of sexual abuse is found in ninety percent of cases in which a child is not examined within twenty-four hours after the sexual abuse occurred. She said that vaginal injuries to young girls heal very rapidly. Dr. Sims did not believe that placing a nose between the labia majora would cause any bleeding or tears.

3

The panties that L.T. wore to the sexual assault examination were tested for DNA. Blake Goertz, the DNA section supervisor with the Department of Public Safety Crime Laboratory in Waco, testified that he did not find any genetic material in the panties other than that belonging to L.T. Goertz said that he found no evidence of biological material from appellant.

On February 4, 2008, after the sexual assault examination, Waco Police Sergeant Scott Holt and a Child Protective Services caseworker interviewed appellant and Nemick at R.T. and B.T.'s house. After the interview, appellant and Nemick left the house. On February 5, 2008, Melody Zuniga, a forensic interviewer at the Advocacy Center, interviewed L.T. Sergeant Holt watched the interview. Sergeant Holt testified that L.T. did not make any allegations of sexual abuse to Zuniga during the interview. Sergeant Holt testified that L.T. responded to every question with either "no" or "I don't know." L.T.'s parents were not allowed to be present during the forensic interview. B.T. understood that L.T. "completely shut down" when she talked to Zuniga.

B.T. testified that, on a later date, she heard L.T. tell a friend, "My uncle hurt me." B.T. said that she pulled L.T. aside and asked her what happened. L.T. told B.T. that appellant touched her on her "pee-pee" with his finger and then told her that he loved her.

R.T. and B.T. saw changes in L.T.'s behavior after her outcry of sexual abuse. R.T. testified that L.T. became bashful for the first time. Before her outcry, L.T. would run around the house not wearing any clothes. After her outcry, L.T. no longer ran around the house without clothes, and she had to have the door closed when she got dressed. She often said, "Boys didn't see girls naked." B.T. testified that, after her outcry, L.T. had frequent nightmares and wanted to sleep with R.T. and her every night.

On March 4, 2008, Don Marshall, an investigator with the McLennan County District Attorney's Office, and Sergeant Holt interviewed appellant. Sergeant Holt testified that appellant did not want to give a written statement. Investigator Marshall began the interview, and Sergeant Holt watched the interview from outside the room. Initially, appellant told Investigator Marshall that he gave L.T. a "raspberry" on her stomach, and appellant denied that he put his mouth or face anywhere near L.T.'s vaginal area. Later, appellant told Investigator Marshall that "[i]t could have happened" when discussing whether he put his mouth and his face near L.T.'s vaginal area. At one point, appellant said that he could not remember whether it happened. At another point, appellant said, "I'm willing to say it did happen." Investigator Marshall then left the room, and Sergeant Holt entered the room and interviewed appellant.

Appellant told Sergeant Holt that, one afternoon, he was at home alone with L.T. and her younger brother. Appellant said that the children were in a bedroom sleeping. Appellant heard them wake up from their nap and then went into the bedroom with them. At that time, the children were jumping and playing on the bed. Appellant told Sergeant Holt that L.T. was only wearing panties. Appellant said that he jumped on the bed with them and then sat in a chair by a computer that was in the room. He then looked at pornography on the computer. Appellant told Sergeant Holt that L.T. came over to the computer. Appellant then picked her up and flipped her onto the bed. Appellant told Sergeant Holt that he began giving L.T. a raspberry on her stomach area and that he could not remember anything that happened after that. He could not remember the "end of the story." Appellant believed that he had a repressed memory. He thought that his nose could have come into contact with L.T.'s panty line. Appellant asked Sergeant Holt whether he believed in "sexual demons." Sergeant Holt believed that appellant was saying that he had been taken over or possessed by sexual demons during the incident.

R.T. and B.T. testified that appellant talked to them about L.T.'s sexual abuse allegations. In essence, appellant told R.T. and B.T. the same story about a "raspberry" incident that he told Sergeant Holt.

L.T. testified at trial. She said that appellant never touched her "pee-pee."

*Analysis*

In Count IV, the State charged appellant with indecency with a child under Section 21.11 of the Penal Code. TEX. PENAL CODE ANN. § 21.11 (Vernon 2011). A person commits the offense of indecency with a child if he engages in sexual contact with a child who is younger than seventeen years of age. *Id.* § 21.11(a)(1). "Sexual contact" includes the act of "any touching . . . of . . . any part of the genitals of a child" if "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c)(1). The indictment alleged that appellant engaged in sexual contact by touching L.T.'s genitals.

Appellant relies on L.T.'s denials in the forensic interview and her trial testimony that sexual abuse occurred. Based on these denials and the lack of physical evidence of sexual abuse, appellant argues that the evidence is insufficient to support his conviction. L.T. told R.T. that appellant hurt her "pee-pee." She also told R.T. that appellant put his nose "on it" and "in the hole." L.T. told B.T. that appellant touched her "pee-pee" with his finger. A child victim's outcry statement alone can be sufficient to sustain a conviction for a sexual offense. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); *Chavez v. State*, 324 S.W.3d

785, 788 (Tex. App.—Eastland 2010, no pet.). As the sole judge of the credibility of the witnesses, the jury was free to believe R.T.'s and B.T.'s outcry testimony and to disbelieve L.T.'s testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). In addition to their outcry testimony, R.T. and B.T. testified about the changes in L.T.'s behavior after her outcry. Those changes in L.T.'s behavior support the conclusion that L.T. had been sexually abused. Viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Therefore, the evidence is sufficient to support appellant's conviction. Appellant's first issue is overruled.

*Jury Instruction*

In his second issue, appellant argues that the jury should have been allowed to consider sympathy for him when reaching a decision on punishment and that, therefore, the trial court erred by instructing the jurors in the punishment charge that they could not consider sympathy in their deliberations. This argument has been rejected in Texas. *Wilson v. State*, 267 S.W.3d 215, 219 (Tex. App.—Waco 2008, pet. ref'd). A trial court need not allow jurors "to base the sentencing decision upon the sympathy they feel for the defendant after hearing his mitigating evidence." *Saffle v. Parks*, 494 U.S. 484, 489 (1990). Appellant's second issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL
JUSTICE

June 2, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel[3] consists of: Wright, C.J.,
McCall, J., and Hill, J.[4]

---

[3]Rick Strange, Justice, resigned effective April 17, 2011. The justice position is vacant pending appointment of a successor by the governor.

[4]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.